## KEETCH et al. v. CORDNER et al.

No. 5826.  Decided November 20, 1936.  (62 P. [2d] 273.)

424

*A. V. Watkins,* of Provo, for plaintiffs.

*Robinson & Robinson,* of Provo, for defendants.

*M. E. Wilson,* of Salt Lake City, and *Reeder & Wallace and DeVine, Howell & Stine,* all of Ogden, amici curiæ.

ELIAS HANSEN, Chief Justice.

Plaintiffs instituted an original action in this court to obtain a writ of mandamus commanding the defendants to proceed to wind up the affairs of the defendant corpora-

tion and distribute its assets to the stockholders thereof. The sole question presented for determination is whether or not within constitutional limitations a corporation may, by amending its articles of incorporation, extend the period of its corporate existence.

Briefly, the material facts upon which this controversy is bottomed are these: On April 16, 1883, plaintiff North Union Irrigation Company was incorporated as an irrigation company pursuant to and under the laws of the then Territory of Utah. Its articles of incorporation contained, among others, the provision that the corporation "shall exist for the term of twenty-five (25) years from and after the date of its incorporation." On March 7, 1908, the foregoing provision was amended so as to provide that the corporation "shall exist for the term of seventy-five (75) years from and after the date of its incorporation." On March 3, 1887, the defendant Provo Bench Canal & Irrigation Company was incorporated as an irrigation company pursuant to and under the laws of the then Territory of Utah. Its articles of incorporation provided that it "shall exist for the term of twenty-five (25) years." On January 10, 1910, the foregoing article of the defendant corporation was so amended as to provide "that the corporation herein provided for shall exist for the term of fifty (50) years."

Each of the corporations, in making the amendment to extend its life, complied with the law affecting the manner in which articles of incorporation may be amended. Both of the corporations which are parties to this proceeding have continuously exercised the powers of a corporation ever since they were originally incorporated. The personal plaintiffs are the directors of the plaintiff North Union Irrigation Company, and the personal defendants are the directors of the defendant Provo Bench Canal & Irrigation Company. The plaintiff corporation owns a substantial number of shares of capital stock in the defendant corporation by reason of which ownership plaintiffs claim the right to maintain this proceeding.

In addition to the briefs filed by the parties herein, other briefs amicus curiæ have been filed with leave of court. One of such briefs was filed by Mahlon E. Wilson and Robert C. Wilson, Esqs., and the other by Reeder & Wallace, De Vine, Howell & Stine, and L. J. Holther. We wish to express our thanks for the valuable aid rendered to us by their briefs. None of those who have filed briefs question the remedy adopted by plaintiffs as being appropriate to present the question which divides the parties. They all seek a decision of this controversy upon merits. We shall so dispose of it.

Plaintiffs claim that the laws under which the plaintiff and defendant corporations attempted to extend the period of their corporate existence are unconstitutional, and hence the attempted extension of the life of the corporations is a nullity. The defendants contend to the contrary. That is the only question before us for determination. The first three sections of article 12, Const. of Utah, provide:

Sec. 1. "Corporations may be formed under general laws, but shall not be created by special acts. All laws relating to corporations may be altered, amended or repealed by the Legislature, and all corporations doing business in this State, may, as to such business, be regulated, limited or restrained by law."

Sec. 2. "All existing charters, franchises, special or exclusive privileges, under which an actual and bona fide organization shall not have taken place, and business been commenced in good faith, at the time of the adoption of this Constitution, shall thereafter have no validity; and no corporation in existence at the time of the adoption of this Constitution shall have the benefit of future legislation without first filing in the office of the Secretary of State, an acceptance of the provisions of this Constitution."

Sec. 3. "The Legislature shall not extend any franchise or charter, nor remit the forfeiture of any franchise or charter of any corporation now existing, or which shall hereafter exist under the laws of this State."

By an act of the Legislature of the Territory of Utah passed in February, 1870, it was provided that the duration of a corporation should not, in any case, be less than

three years nor more than twenty-five years. Laws Utah 1870, p. 137. In 1880 the law was so amended that corporations may be formed for a period of not less than three years nor more than fifty years. Laws Utah 1880, chap. 17, p. 19. In 1901 the law was again amended so that the duration of a corporation may be fixed at not less than three nor more than one hundred years. Laws 1901, c. 81. Since 1901 the articles of agreement or incorporation must designate the period during which the corporation may exist, which must be not less than three nor more than one hundred years. R. S. Utah 1933, 18-2-5. The act of 1880, which was in effect when the corporations involved in this litigation were organized, provided that the articles of agreement or incorporation may be amended by increasing or decreasing the capital stock, by changing the number of directors, trustees, or officers, and that "the articles of agreement or incorporation may be otherwise changed or amended, Provided, Such amendment does not alter the original purpose of the corporation." Laws Utah 1880, p. 20, § 7; Laws Utah 1884, p. 80, § 7. The law affecting the right to amend the articles of agreement of a corporation has not been, so far as material to our inquiry, changed since 1880. See Comp. Laws Utah 1888, § 2273, § 7, p. 5; R. S. Utah 1898, § 338, p. 163; Comp. Laws Utah 1907, § 338, p. 239; Comp. Laws 1917, § 886, p. 284; R. S. 1933, 18-2-44, p. 300. In this connection it should be noted that,

"All laws of the Territory of Utah now in force, not repugnant to this Constitution, shall remain in force until they expire by their own limitations, or are altered or repealed by the Legislature." Const. Utah, art. 24, § 2.

It will thus be seen that when the corporations involved in this litigation were organized, and ever since that time, corporations have been by statute permitted to amend their articles of incorporation by extending the period of their existence. If such statutes are free from constitutional objection, plaintiffs are not entitled to any relief in this proceeding. The amendments to the articles of agreement of

both corporations were made before the period of the existence fixed in the original articles had expired. It is conceded that the articles were amended as by law provided. It is not contended that there is any legal objection to amending articles of agreement of a corporation merely because all of the stockholders thereof do not consent thereto. If such a claim were made, it could not be successfully maintained. The law which was in existence at the time the articles of agreement were entered into became a part thereof. In legal effect, the signers of the original articles of incorporation agreed that they may thereafter be amended in conformity with law. *Weede* v. *Emma Copper Co.,* 58 Utah 524, 200 P. 517.

As early as the seventeenth century trading corporations, somewhat similar to our modern corporations, came into existence in England. At that early time a corporation could be created only by the will of Parliament or of the Crown. Fletcher's Cyc. of Corpns. vol. 1, pp. 6-8. In America the authority to create corporations is vested in the lawmaking power. Such power is absolute except as restricted by the Constitutions of the various states and the Constitution of the United States. Prior to statehood the Territorial Legislature of Utah granted to natural persons the privilege or right to engage in business as a private corporation. Such practice was not peculiar to Utah. The unrestricted power of the legislative branch of the government to create corporations was calculated to lead to favoritism and to the creation of monopolies. It was to prevent such evils that the provisions here brought in question were made a part of our State Constitution.

One of the cardinal rules applicable to construction of a constitutional provision is that it should be, if possible, so construed as to effectuate the purpose sought to be accomplished. Another doctrine to which this court by numerous decisions is committed, is that an act of the Legislature may not be declared unconstitutional unless it is clearly so. In our discussion of the constitutional

provisions involved in this controversy, these rules should be kept in mind. At the outset, it should be observed that there is nothing in our Constitution which limits the period during which a corporation may exist. That matter is left entirely with the Legislature. It should be further noted that the framers of the Constitution expressly conferred upon the Legislature authority to alter, amend, or repeal all laws relating to corporations. The right of the Legislature to amend laws affecting corporations necessarily implies a right of stockholders of a corporation to amend its articles of agreement to conform to the law when amended. Nor may it be said that the law here brought in question offends against that provision of article 12, § 1, of the Constitution, which prohibits the creation of a corporation by special act. It is argued in one of the briefs filed in this cause that the constitutional inhibition against the Legislature creating a corporation by special act does not apply to amendments of articles of agreement of a corporation already in existence. The absence of authority to create a corporation, it is argued, is so unlike the lack of power to extend the life of a corporation which already exists that the absence of the former authority does not by implication or otherwise destroy the latter power. It is not necessary to pause to discuss the argument so advanced because none of the acts under review are in any sense special acts.

The disposition of this litigation depends primarily upon the construction that is given to section 3 of article 12, which we again quote:

"The Legislature shall not extend any franchise or charter, nor remit the forfeiture of any franchise or charter of any corporation now existing, or which shall hereafter exist under the laws of this State."

Plaintiffs contend that the foregoing provision prohibits the Legislature from passing any law which extends the life of an existing corporation and, by necessary implication, prohibits the Legislature from passing any law authorizing the stockholders thereof to so amend their articles of agreement as to extend the existence of a corporation

beyond the period fixed in the original articles. In support of their position they cite and rely upon the case of *Boca Mill Co.* v. *Curry*, 154 Cal. 326, 97 P. 1117. In the main, that case supports plaintiffs' position. It was decided October 8, 1908. In this connection it should be noted that the Constitution of Utah was approved by the Constitutional Convention on May 8, 1895. It was adopted by a vote of the electors of Utah on November 5, 1895. It became effective January 4, 1896. It will thus be seen that while we apparently copied section 3 of article 12 of our State Constitution from the Constitution of California, it may not be said that the construction placed thereon by the Supreme Court of California was in any wise approved because the Boca Case, supra, was decided long after our Constitution was adopted.

It is reasonably clear from the language used in the section under review that the Legislature may not by either a special or a general law extend the life of a corporation. If a private corporation is to be brought into existence or its life extended, it may not be done by the Legislature. It must be done by the incorporators or stockholders. The acts here questioned do not extend any franchise or charter of any corporation. They merely authorized the stockholders to accomplish that end. If the objection urged against the acts in question is to be sustained, it would seem to follow that the Legislature is precluded from permitting stockholders of an existing corporation to amend its articles of agreement to the end that its charters or franchises will be extended in any particular. The word "extend" means "to lengthen or prolong either in space or time; * * * to enlarge, in any sense; to make more comprehensive or capacious." Webster's New International Dict. (2d Ed.). As the word "extend" is so defined, an amended article of agreement increasing the amount of capital stock which a corporation may issue is an extension of its franchise or charter. So, also, a corporation limited by its articles to doing business in one county, would be

"extending" its charter or franchise if by amendment it sought authority to do business in two or more counties. The same line of reasoning that would deny a corporation the right to prolong its existence by amending its articles would deny it authority to amend its articles to the end that it may extend its corporate power in any other particular. Amendments to articles of incorporation increasing the amount of authorized capital stock, extending the time of its existence, and otherwise enlarging corporate authority, have been a common practice in Utah both before and since the adoption of our Constitution. Indeed, one of the common purposes sought to be accomplished by amending articles of agreement of a corporation is to extend corporate authority. Notwithstanding our Constitution has been in force for more than forty years, neither the state nor any one else has heretofore, so far as we are advised, questioned in any court of competent jurisdiction the constitutionality of the law authorizing stockholders of a corporation to amend its articles extending its period of duration or to make other amendments as are by law permitted. When an act has received executive and legislative approval during a long period of time and rights have been acquired in reliance upon its validity, courts are reluctant to strike it down. Cooley's Constitutional Limitations (4th Ed.) p. 312; 12 C.J. 715. As heretofore indicated in this opinion, we should ascertain the purposes which the framers of the Constitution sought to accomplish by the provisions under review and then, if possible, give such provisions a construction that is calculated to accomplish that purpose. It is quite apparent that the Constitution was not directed against limiting the authority of the Legislature to fix as it might see fit the period of corporate existence, because the Constitution is silent in that respect. It is difficult to perceive how the evils of granting favoritism and creating corporate monopolies can be lessened by prohibiting existing corporations from extending their corporate existence by amending their articles, when at the same time newly

formed corporations may take advantage of the longer period. Such a construction would tend to foster rather than to destroy inequality. Thus, one corporation created immediately before the period was extended by legislative enactment might exist for a period of only fifty years without any authority to extend its life, while another created immediately after the last amendment may exist for a period of one hundred years. Nor can we perceive of any valid reason why the framers of the Constitution should deny to those who form a corporation the right to take advantage of the full period for which a corporation may exist, merely because the corporation was not originally organized for the full period allowed by law. In the absence of language to the contrary, the presumption should be indulged that the Legislature, having unlimited power to fix the period of corporate existence, may extend such period without regard to the time when a particular corporation was organized. It will be noted that the constitutional provision under review prohibits the Legislature from extending any charter or franchise of a corporation. By such language it does not expressly, or in our view impliedly, prevent the Legislature from authorizing the stockholders of a corporation to extend its existence. Had the framers of the Constitution intended to prevent the Legislature from conferring such authority on the stockholders, it would have been a simple matter to have so provided. They did not do that, and we are not, under the guise of construction, at liberty to extend the meaning of the language used beyond what is the fair purport thereof. It may be argued that such a conclusion gives but little, if any, effect to section 3 of article 12. As so interpreted, the section prohibits the Legislature from passing any law which, without the intervention of stockholders, extends the life of a corporation beyond a period fixed in the articles of incorporation. It prohibits the Legislature from passing any law, general or special, directly conferring additional authority upon corporations. That, in our view, is all that was intended by section 3 of article 12. To hold that such sec-

tion prohibits the Legislature from passing laws under which existing corporations may, if they choose, extend their rights, is to read into the section a meaning not conveyed by the language used.

We are thus of the opinion, and so hold, that the acts in question are not vulnerable to the constitutional objections urged by the plaintiffs. It follows that the application for a writ of mandamus should be, and accordingly is, denied. This being a proceeding in which all of the parties are equally interested in having the law applicable to the authority of corporations to extend their existence set at rest, no costs will be allowed.

FOLLAND, EPHRAIM HANSON, MOFFAT, and WOLFE, JJ., concur.