# GUBLER et al. v. UTAH STATE TEACHERS' RETIREMENT BOARD et al.

No. 7132.   Decided April 23, 1948.   (192 P. 2d 580.)

See 56 C. J., Schools and School Districts, sec. 20. Vested right of pensioner to pension, see note, 137 A. L. R. 249. See, also, 40 Am. Jur. 973.

*Grover A. Giles*, Atty. Gen., and *C. N. Ottosen*, Asst. Atty. Gen., for appellants.

*Lynn S. Richards* and *Richard L. Bird, Jr.*, both of Salt Lake City, for respondents.

LATIMER, Justice.

Plaintiffs commenced this action in the District Court under the declaratory judgment section of our statute, seeking to have Section 75-29-21, U. C. A. 1943, of the act designated as "Teachers Retirement Act" (as amended by Chapter 95, Laws of Utah, 1945) declared valid and constitutional, and to have the section as amended interpreted so as to permit them to receive credit in computing retirement benefits for prior services performed as teachers in parochial schools. The District Court sustained the constitutionality and validity of the act in its application to the plaintiffs, and defendants seek a reversal of the judgment by this court. The facts are not in dispute, so we are concerned only with questions of law.

Only the facts considered of importance to a proper disposition of this appeal are referred to. Each of the plaintiffs, prior to July 1, 1937, taught in one or more schools located in the State of Utah whose credits were approved by the University of Utah, the Utah State Agricultural or the Utah State Board of Education. The schools, however, were parochial schools and prior to July 1, 1937, were not a part of the State School System. Each of the plaintiffs, prior to July 31, 1938, became a contributing member of the State Teachers' Retirement System, and met all of the qualifications necessary to participate in the retirement plan. The dispute arises over the number of years each plaintiff is entitled to claim for service prior to July 1, 1937. Prior to 1945, Section 75-29-21, which was the glossary section of the act, defined, among others, the following words and phrases:

"(3) 'Teacher' shall mean any person who is serving under a legal certificate as a legally qualified teacher in a public day or evening school or as a superintendent, or supervising executive, or educational administrator of public schools, or librarian and shall include teachers with and without a certificate who are employed by any state educational institution supported and controlled by the state, and persons with or without a certificate who are, employed on the staff of the state superintendent of public instruction to render service of an educational nature. In all cases of doubt the retirement board hereinafter created shall determine whether any person is a teacher as defined in this act."

"(6) 'Prior Service' shall mean service rendered prior to July 1, 1937, in a status requisite for membership in the retirement system.'

"(9) 'Service' shall mean service in the public schools of this state in a status requisite for membership in the retirement system."

In 1945 the State Legislature amended the Teachers' Retirement Act and Chapter 95, Laws of Utah, 1945, now defines the same words and phrases as follows:

"(3) 'Teacher' shall mean any person who is serving under a legal certificate as a legally qualified teacher in a public day or evening school or as a superintendent, or supervising executive, or educational administrator of public schools, or librarian *or persons who taught in schools of this state whose credits were approved by the university*

*of Utah or the Utah state agricultural college or the state board of education and who became contributing members of the state teachers retirement system prior to July 31, 1938,* and shall include teachers with and without a certificate who are employed by any state education institution supported and controlled by the state, and persons with or without a certificate who are employed on the staff of the state superintendent of public instruction to render service of an educational nature. In all cases of doubt the retirement board hereinafter created shall determine whether any person is a teacher as defined in this act."

"(6) 'Prior service' shall mean service rendered prior to July 1, 1937, in a status requisite for membership in the retirement system."

"(9) 'Service' shall mean service in the public schools of this state in a status requisite for membership in the retirement system, *or in school as prescribed in subdivision 3 hereof.*"

(Italicized words indicate changes made by the amendment).

Insofar as known to the parties, there are fifty teachers who are affected by that portion of the amendment which seeks to give credit for teaching in parochial schools prior to 1937, and of that number, one will receive credit for 22 years of service if the amendment is constitutional; two will receive credit for 15 years or more and less than 20 years; seven for 10 years or more and less than 15 years; thirteen for 5 years or more and less then ten; and twenty-seven for five years or less.

For illustrative purposes we point out that there are three factors which are used by the Teachers' Retirement Association in determining the amount of the monthly payment due each teacher. The award is based on an annuity, pension for current service, and pension for prior service. Assuming the constitutionality of the amendment the prior service factor will include both the term of service while employed in State Schools and the term of service while employed in other accredited schools. The formula used in computing the amount payable yearly for "prior service" is 1/70th times the average salary for the last ten years, times the number of years of prior service. If we assume the average salary of a teacher to be $2,500 per year, and we used two examples, one where the teacher has twenty years in the

public schools of this state, and one where 15 years of service is in the state school system and 5 years in another accredited school system, which is disallowed, we find that in the former instance the monthly retirement allowance, based only on the prior service formula, amounts to $59.52, while the monthly allowance in the latter instance amounts to $44.64. We set out this illustration to indicate that the additional burden placed on the retirement fund will not impair the rights of other participating members.

There are only two state constitutional provisions with which we need concern ourselves. These are: Article VI, Section 30; Article I, Section 4; and Article X, Section 13. We shall treat them seriatim:

Article VI, Section 30, Constitution of Utah, provides:

"The Legislature shall have no power to grant, or authorize any county or municipal authority to grant, any extra compensation, fee or allowance to any public officer, agent, servant or contractor, after service has been rendered or a contract has been entered into and performed in whole, or in part, nor pay or authorize the payment of any claim hereafter created against the State, or any county or municipality of the State, under any agreement or contract made without authority of law: Provided, that this section shall not apply to claims incurred by public officers in the execution of the laws of the State."

If appellants' contention that the retirement plan as modified by the 1945 amendment is a payment for services which have been previously rendered, within the meaning of this section of Article VI, then not only must the act be unconstitutional insofar as these plaintiffs are concerned, but the act as a whole must be stricken down.

This Court has in the cases of *Gibson* v. *Utah State Retirement Board,* 99 Utah 576, 105 P. 2d 353, and *Driggs* v. *Utah State Teachers Retirement Board,* 105 Utah 417, 142 P. 2d 657, and *McCarrey* v. *Utah State Teachers' Retirement Board,* 111 Utah 251, 177 P. 2d 725, passed on some of the legal principles arising out of this act. While we have sustained the rights of individual teachers to participate in the plan, we have not been required to directly rule on the question of whether or not the act offends against Article

VI, Section 30 of the Constitution. There is, however, certain language in two of the opinions which points towards a holding that the original act, by providing credit for prior service, did not operate retroactively so as to grant additional remuneration for services fully performed.

In the case of *Driggs* v. *Utah State Teachers Retirement Board*, 105 Utah on page 432, 142 P. 2d on page 663, supra, District Judge Crockett, speaking for ■ this court, stated:

"The avowed purpose and the only purpose which the act creating the Teachers' Retirement System could have is that of improving the Utah educational system by better compensating the teachers and rewarding them for faithful and continued service, thus making the profession more attractive to qualified persons. * * *"

In the later case of *McCarrey* v. *Retirement Board*, 111 Utah 251, page 726 of 177 P. 2d supra, Mr. Justice Wolfe reaffirmed the principle in the following language:

"The purpose of the Teachers' Retirement Act is to attract to and retain in the public school system qualified and experienced persons as teachers."

The Supreme Court of New York in the case of *Wright* v. *Craig*, 202 App. Div. 684, 195 N. Y. S. 391, held that an act which set up a pension plan for city employees did not offend against the constitutional provision of the state prohibiting increased compensation to any public officer, servant, agent, or contractor. The following language taken from the opinion at page 394 of 195 N. Y. S. states the reasons for the holding:

"The actual question of the validity of this statute depends upon whether the pensions authorized by its terms are in the nature of increased compensation to public servants (Const. Art. 3, § 28), or involved a 'gift' of the city's moneys (Const. Art. 8, § 10). * * * The rendering of services by persons of the class affected by the statute now examined is voluntary on their part, and they are under contract of service for no fixed time; hence any promise of reward in addition to a daily, monthly, or yearly compensation which looks to the future and depends upon the continued performance of service after

■

the promise is made, enters into the consideration for services to be rendered and is not 'extra compensation' nor is it a 'gift'. This element of a prospective benefit to the employee for future services is in no sense lacking from the statute in question. The future period may be short, depending upon the postponement of the employee's condition of incapacity, or, in many cases, of his attaining to the full period of service under the act; but the relation of the compensation to the value of the future services is a matter of legislative discretion. Under this statute employees 'who shall have been' in the employment for a certain period may receive pensions upon 'retirement' from active service.' The retirement is necessarily to be at some time after the passage of the act, and applies only to persons who until retired shall remain in 'active service' from which by virtue of the statute they are to be retired. *Thus the statute makes the promise, not of 'extra compensation,' but of a prospective reward under certain conditions to an employee who remains in service for some period thereafter, which, as I have noted, may be short, but none the less involves futurity of performance sufficient to take from the pension, when awarded, the character of a gift or extra compensation, and to bestow upon it the quality of compensation for services;* the quantum being within the unrestricted power of the Legislature. \* \* \*" (Italics mine).

In an earlier New York case, *Mahon* v. *Board of Education of City of New York,* 68 App. Div. 154, 74 N. Y. S. 172, 174, the Supreme Court of New York announced a similar holding. The following quotation is taken from that case:

"\* \* \* These annuities, after the expiration of the period of active service, are not gratuities, but are in the nature of compensation for the services previously rendered, for which full and adequate compensation was not received at the time of the rendition of the services; in other words, it is, in effect, pay withheld to induce long continued and faithful service. Such statutes are designed to benefit the public service in two ways: First, by encouraging competent and faithful employes to remain in the service, and refrain from embarking in other vocations; and, second, by retiring from the public service those who, by devoting their best energies for a long period of years to the performance of duties in a public office or employment, have by reason thereof, or of advanced age, become incapacitated from performing the duties as well as they might be performed by others more youthful, or in greater physical or mental vigor. Provision is thus made for the partial support of such teachers when their retirement without such provision was deemed inequitable, and, but for such provision, doubtless would not be enforced. *These and other considerations will sustain such legislation from successful attack*

*where the legislature has limited the application of the law to those who are in the public service or employ at the time of its enactment. * * ***"** (Italics mine).

In the case of *State* v. *Levitan*, 181 Wis. 326, 343, 193 N. W. 499, 505, Mr. Justice Owen of the Supreme Court of Wisconsin in passing on the constitutionality of a similar act said:

*"* * * As we view it, the annuity based on past service is not intended to be, or operate as, compensation for past service. It was rather intended to be, and in fact is, an inducement to the seasoned and experienced teacher to remain in the service and give the public the benefit of his experience.* We think there was plenty of room for the Legislature to determine that the ultimate success of the pension system itself required special consideration of those constituting the educational forces of the state at the time of the enactment of the law, *not as compensation for prior service*, but rather as an inducement to them to remain in the service, to the great benefit of our educational institutions." (Italics mine.)

Having previously indicated an acceptance of the principle that the purpose of the Teachers' Retirement Act is to attract to and retain in our public school systems qualified and experienced teachers, we affirm that principle. Our constitutional provision contemplates that to make the payment of additional compensation illegal the services must have been fully performed prior to the payment. Such is not the case in this situation. In the present controversy the contracts were still being performed at the time the amendment was made. The teachers' services were still of value to the school system, and the Legislature was entitled to place its value on those services. If a teacher has become experienced through years of teaching, this is a factor which may be given consideration by the Legislature in setting the amount of remuneration that can be paid in the future. If in the judgment of the Legislature the retirement plan will induce experienced and competent teachers to remain in the state school system by receiving additional pay in the form of an assured income upon retirement, then the fact that prior service is included as one of

the factors in arriving at the amount of the increase in payments after retirement, does not necessarily taint the act with illegality because this factor tends to grant additional compensation. It can reasonably be established that this factor together with others used by the system has a tendency to carry out the legislative desire to retain competent help active in the teaching vocation. Prior service credit may have a tendency to increase the payments made to the teacher during the time he or she teaches, between the passage of the act and the time of retirement, but this does not contravene the constitutional provision. It may be considered in the nature of an inducement to have experienced teachers remain part of the public school system. If so construed, the act is still valid. The act (not the amendment) can only be invalid in the event we were required to hold that the prior service credit was in effect a gratuity for services previously performed. We are not impressed that the act should be so construed. If there is reasonable doubt about the validity or invalidity of this act, then the duty of this court is to resolve the doubt in favor of constitutionality. We believe the legislative purpose was to maintain or better the standards of the teaching vocation in this state, not by attempting to illegally pay teachers for what they had done, but to legally offer them additional compensation if they would continue to devote their energies to instructing the school children of this state. As was said in the case of *State* v. *Levitan,* supra, at page 342 of 181 Wis., at page 505 of 193 N. W.:

"We do not think it necessarily follows that, because the Legislature, in its attempt to construct an enduring and efficient pension system, saw fit to base the annuity which teachers already in service are to be awarded in part upon the service rendered prior to the enactment of the law, it was its dominant purpose or intent to award such teachers extra compensation for services already rendered. If the Legislature deemed such a provision essential, or even helpful, in winning the cordial cooperation of the most valuable members of the instructional force to the promotion of the successful operation of the scheme, by holding out to them an inducement for their continued and devoted service, is it not apparent that the dominant purpose of the provision was to pro-

mote the public rather than individual or private welfare, not to grant compensation for prior service but to raise educational standards? As said in *Attorney General* v. *Connolly*, 193 Mich. 499, at page 513, 160 N. W. 581, 586, by Brooke, J.:

" 'Public interest is subserved, not only by inducing persons who are not in the public service to enter, but as well as inducing competent persons already in public employment to continue in it and to render better service, so that they may secure such continuance. Teaching should be made a vocation instead of a stepping stone to another profession, and anything which tends to make the present educational force so regard it is a distinct public benefit.' "

What we believe our constitution prohibits is increasing the compensation after the contract has been fully performed, or the services fully rendered. The distinction is illustrated by the principles laid down in *McCarrey* v. *Utah State Teachers Retirement Board,* supra. In that case Mrs. McCarrey sought an increase in her pension payments after she had retired and was no longer performing the services as a school teacher. There we held the additional prior services could not be claimed by her. To have permitted her to take advantage of the amendment to the act would have been granting extra compensation after the services were fully performed. In the general plan, the active members of the school system have additional years to teach, and the legislature may, to insure their retention, increase the amount they may receive if they elect to and do remain part of the system.

We conclude the retirement plan as set up by the legislature does not offend against Article VI, Section 30, Constitution of the State of Utah.

Appellants' most earnestly insist that the 1945 amendment is violative of Article I, Section 4 and Article X, Section 13 of our state Constitution. These sections read:

"Sec. 4. (Religious Liberty.)

"The rights of conscience shall never be infringed. The State shall make no law respecting an establishment of religion or prohibiting the free exercise thereof; no religious test shall be required as a qualification for any office of public trust or for any vote at any election nor; shall any person be, incompetent as a witness or juror on account of re-

ligious belief or the absence thereof. There shall be no union of Church and State, nor shall any church dominate the State or interfere with its functions. No public money or property shall be appropriated for or applied to any religious worship, exercise or instruction, or for the support of any ecclesiastical establishment. No property qualification shall be required of any person to vote, or hold office, except as provided in this Constitution."

Article X, Sec. 13. (Public aid to church schools forbidden.) :

"Neither the Legislature nor any county, city town, school district or other public corporation, shall make any appropriation to aid in the support of any school, seminary, academy, college, university or other institution, controlled in whole, or in part, by any church, sect or denomination whatever."

We are unable to consistently follow appellant's claim, that by granting plaintiffs' prior credit for the time they were teaching in parochial schools, the act amalgamates church and state. If such were the effect, then the amendment would fail as contravening the quoted sections. However, the facts as stipulated and the principles upon which we sustain the Retirement Act all militate against the contention.

The facts show that all the teachers involved in this action became contributing members of the State Retirement System prior to July 31, 1938. For the most part the parochial schools in which the majority of the plaintiffs taught were closed during the year 1937, and the physical properties turned over to the state school system. So that for approximately seven years before the act was amended in 1945, the teachers had severed all connections with any church school.

The principles which sustain the original act are that the retirement benefits are an inducement to experienced teachers to join and remain with the state school system, and are in effect payment for services performed between the date of the act and the date of retirement. If the Legislature has the right to consider experience in teaching as

one of the factors in increasing the retiring benefits, does it not have the right to determine the source of the experience? Can it be said that the Legislature is so circumscribed that it can, with legality, say service in a public school makes the retention of a teacher valuable to the school system, but it cannot say, service in a parochial school has a like effect? Cannot the Legislature determine that an experienced teacher is a valuable asset to the public schools of this state regardless of what type of school, parochial or state, the teacher had worked in?

The answers to the above questions might in part depend on the relative school standards, but the stipulated facts raise no question as to the lack of standards maintained by the parochial schools during the time plaintiffs were teaching; and even were there some difference, the legislature has some discretion in deciding what shall be considered as valuable experience. If the legislators when they enacted the original retirement act reasonably believed that the retention of experienced teachers would be of benefit to the school system, it is not unreasonable to assume that this reason prompted the 1945 amendment. If like reasoning can be applied to teachers who are encompassed by the original act and to those who are encompassed by the 1945 amendment, then the claim that including prior service in parochial schools is of benefit to church must fail. The increased benefits are, in both instances, payments to the teachers to continue in the service until reaching retirement age, and to encourage retirement when they have reached the appropriate age to make way for younger and more vigorous teachers. These considerations have a reasonable tendency to build a better and more effective school system, and neither aid or assist church schools which are no longer being maintained.

There are certain fundamental principles which must be taken into consideration by this court before we strike down an act of the Legislature. Quoting from ■ Section 39, Black's Handbook of Constitutional Law:

"Every presumption is in favor of the constitutionality of an act of the legislature. * * * Every reasonable doubt must be resolved in favor of the statute, not against it; and the courts will not adjudge it invalid unless the violation of the constitution is, in their judgment, clear, complete, and unmistakable."

It would require an exceedingly strained construction of the 1945 amendment to hold that payment of retirement benefits to teachers which are to be made in the future, are an indirect contribution to a church, because the teachers many years before the payments are due gained their experience in a church school system. We are not convinced that such is the effect of the questioned amendment.

We have not overlooked the caveat that this court should be ever mindful not to abridge, in the name of education, the complete division of religious and civil authority which our fore fathers made. Were we convinced that this act in the slightest degree introduced sectarian education and observance into the public schools, had a tendency to aid or support religious schools or a religious faith, we would cast it aside. However, tested by every reasonable hypothesis, the act does not offend against the rule that church and state must forever remain separate. Recently the Supreme Court of the United States in the case of *Everson* v. *Board of Education*, 330 U. S. 1, 67 S. Ct. 504, 91 L. Ed. 711, 168 A. L. R. 1392, held that an act which permitted payment of state funds to transport students to Catholic schools was not unconstitutional. We quote from the dissenting opinion of Mr. Justice Rutledge, 330 U. S. 1, 67 S. Ct. at page 527, 91 L. Ed. 711, 168 A. L. R. 1392, to illustrate why the dissenting members of the court reasoned the act was offensive:

"Finally, transportation, where it is needed, is as essential to education as any other element. Its cost is as much a part of the total expense, except at times in amount, as the cost of textbooks, of school lunches, of athletic equipment, of writing and other materials; indeed of all other items composing the total burden. Now, as always the core of the educational process is the teacher-pupil relationship. Without this the richest equipment and facilities would go for naught. See *Judd* v. *Board of Education*, 278 N. Y. 200, 212, 15 N. E. 2d 576, 118 A. L. R. 789. But the proverbial Mark Hopkins conception no longer

suffices for the country's requirements. Without buildings, without equipment, without library, textbooks and other materials, and without transportation to bring teacher and pupil together in such an effective teaching environment, there can be not even the skeleton of what our times require. Hardly can it be maintained that transportation is the least essential of these items, or that it does not in fact aid, encourage, sustain and support, just as they do, the very process which is its purpose to accomplish. No less essential is it, or the payment of its cost, than the very teaching in the classroom or payment of the teacher's sustenance. * * *"

It would seem a strange ruling to say that because the Legislature included the time of teaching in a parochial school as one element in a plan to induce teachers to remain with the state school system, that such inclusion may be indirectly maintaining an essential part of church schools. It would seem more consonant with reason to say the retirement plan bore some reasonable relationship to the maintaining of a secular state system to the detriment of a church system. If church schools were still being maintained, the effect of the present act would tend to cause the teacher to leave the parochial school to become a member of a system which offered an attractive pension plan. Quite a different picture would be presented had the state attempted to pay part of a teacher's salary who was still a member of a church school system. In that case the payment might be considered in aid of the church schools. Under the present plan, no money is being appropriated or used to maintain any school operated or controlled by a church and no funds are used to assist in maintaining any essential element of such a school. Likewise, no public money or property has been appropriated or is being applied to any religious worship, exercise, or instruction. We fail to see how the amendment in any way breaches the wall between church and state.

Appellants, while conceding that public policy permits the school system to establish a retirement plan, nevertheless, contend that the amendment of 1945 is merely a guise to permit the retirement board to make illegal expenditures

of public funds. In support of this contention, they rely on the case of *Talbot* v. *Thomas*, 286 Ky. 786, 151 S. W. 2d 1. By quoting from this case we do not intend to approve nor disapprove the result reached. We believe that the case is clearly distinguishable from the one at bar. In that case Kentucky had a constitutional provision which prohibited the payment of any sum in excess of $5,000 per annum to any public officer. The General Assembly enacted a retirement bill for judges which in substance authorized a substantial yearly payment after retirement. A special court held the act unconstitutional because it violated a constitutional provision limiting compensation of state officers to $5,000 per annum. Two short quotations from the prevailing opinion of that case will point out the difference between it and the case at bar. The majority opinion includes the following language 151 S. W. 2d at page 4:

"It is clear that the amounts authorized by this act to be paid the judges after their retirement is intended as additional compensation for the official services rendered by them. In order to receive these amounts they are required to do nothing more than perform their official duties while in office. * * *

"If a provision for the widow or heirs of one in office, to be effective on his death, would be considered part of the consideration for his future services, a fortiori a provision for the officer himself on retirement from office must be treated as a part of the compensation for his services while in office."

One of the underlying principles of a retirement plan is to offer an inducement in the form of future retirement benefits as an inducement for teachers to remain in service. While the exact amount each yearly sum would be increased by the plan is not readily ascertainable because of unknown factors, it is readily ascertainable that any amount paid after retirement must, to some degree, be treated as an increase in the amount paid during the active service. If, therefore, in this case the amount a teacher could be paid per annum were limited by a constitutional provision, and if he or she were being paid the maximum yearly amount allowable under the constitutional provision, then even the

smallest increase by way of retirement payment would be an increase over and above the amount constitutionally permitted. No such principle is involved in this decision, and no contention can be made that any teacher's compensation when considered on the basis of both present payment and future benefit is in excess of any permitted amount.

Lastly, appellants urge that the act is unconstitutional because the credit for prior service is based on services performed, for which services the state could not have legally expended its money at the time they were performed. This contention must also fail. The amendment does not act retroactively so as to pay these teachers for being instructors in church schools. The amendment pays for services in futuro. Had the act provided payments to these plaintiffs for teaching in church schools without their becoming and remaining a part of the state school system, then the act would have been void. However, as we interpret the legislative intent, we arrive at the conclusion that the motive actuating the legislature in enacting the 1945 act, and the previous acts, was to build a better state school system. That to do this, experienced teachers must be retained in the service. That these plaintiffs were a class of teachers who, because of experience, were more valuable to the system as long as they could be retained as instructors, than would be inexperienced teachers who would take their place. This seems to be a logical conclusion, irrespective of the fact that the experience gained was in schools that were not maintained by the state. If the legislature determined that experience in any accredited school, private or public, is a factor which can be considered in granting a teacher additional compensation, for future services, we are not at liberty to decree otherwise. As previously mentioned, if the legislature can prescribe credit for prior service, it would appear the right to determine where the credit may be earned is for that body to decide. The success of the school system is based on having qualified teachers available for instruction, and the Legislature in devising ways of attracting better and more efficient instructors should not be un-

duly circumscribed by being limited to offering credit for prior service only to those teachers who are members of the state school system.

The judgment is affirmed.

McDONOUGH, C. J., and PRATT and WADE, JJ.


WOLFE, Justice (concurring).

I concur. I might add that I do not think that Article VI, Section 30 of the Constitution of Utah was intended to prevent retirement plans for public officers or employees. While its language is broad, its intent was to prevent the acceptance of a low bid from a favored contractor and a subsequent increase of his emoluments by additional later payments. This was one device by which contractor city machines had been built up in eastern cities at the time our Constitution was being drafted. As to public officers, agents and servants, it was to prevent extra pay above that contracted for in the case of the public agent or servant, or above the statutory salary which becomes part of the employment contract upon the election or appointment of the public officer.