446 P.2d 958

**TRADE COMMISSION of Utah, State of Utah, Plaintiff and Appellant,**

v.

**SKAGGS DRUG CENTERS, INC., Grand Central Stores, Inc., dba Warshaw's Giant Food and Grand Central Drugs, Inc., Defendants and Respondents,**

**Utah Retail Grocers Association, Intervenor and Appellant.**

**No. 11034.**

Supreme Court of Utah.

Nov. 1, 1968.

Phil L. Hansen, Atty. Gen., Floyd G. Astin, Asst. Atty. Gen., Salt Lake City, for appellant.

Jones, Waldo, Holbrook & McDonough, H. R. Waldo and Roger J. McDonough, Salt Lake City, for Skaggs Drug Centers, Inc., respondent.

Mulliner, Prince & Mangum, Robert M. Yeates & Denis R. Morril, Salt Lake City, for Grand Central Stores, Inc., respondent.

Worsley, Snow & Christensen, Salt Lake City, for Utah Retail Grocers Assn., intervenor and appellant.

NELSON, District Judge:

This case comes to our attention on an appeal by the plaintiff-appellant from the trial court's judgment which held the Utah Unfair Practices Act in its entirety unconstitutional—void because of its violation of the Fourteenth Amendment to the United States Constitution, and its infringement of Article I, Sections 1, 2, 7, 18, 23 and 24, and Article VI, Section 26, and Article XII, Section 20 of the Constitution of Utah.

The record discloses a complaint was filed in the District Court of Salt Lake County on the 16th day of September, 1966, by the plaintiff, Trade Commission of Utah, charging the defendant, Skaggs Drug Centers, Inc., on six counts and the defendant, Grand Central Stores, Inc., on five counts of violating the Utah State Unfair Practices Act. The counts charged that on different occasions during the months of November and December, 1965, and June, 1966, the defendants and each one of them advertized for sale diverse articles of merchandise, wearing apparel and foot products, and in particular, toothpaste, Aqua Net hair spray and the comparable Style hair spray, cigarettes and cigarette lighters, vitamins, Bayer aspirin, Polaroid Swinger cameras, Lee's men's pants and frozen tom turkeys below cost as defined in the Unfair Practices Act.

Many of the facts alleged by the plaintiff were undisputed, they having been admitted in defendants' answer or covered by stipulation of the parties entered into prior to trial. Each defendant, however, alleged by way of answer that plaintiff's complaint failed to state a claim against the defendants upon which the relief prayed for could be granted for the reason the Unfair Practices Act, and in particular Section 13-5-7 thereof was unconstitutional.

On December 26, 1966, pursuant to motion, the Utah Retail Grocers Association was permitted to intervene as a party plaintiff. Thereafter the matter was tried before the district court sitting without a jury. After hearing and deciding the case the court entered its Findings of Fact and Conclusions of Law and its Judgment which was for the defendants and against the plaintiff and intervenor Utah Retail Grocers Association on each count of plaintiff's complaint.

The provisions of the Unfair Practices Act applicable herein are:

(a) It is hereby declared that any advertising, offer to sell, or sale of any merchandise, either by retailers or wholesalers, at less than cost as defined in this act with the intent and purpose of inducing the purchase of other merchandise, or of unfairly diverting trade from a competitor or otherwise injuring a competitor, impairs and prevents fair competition, injures public welfare, is unfair competition contrary to public policy and the policy of this act and is declared to be a violation of this act, * * *.

The Unfair Practices Act as amended defines the term "cost," "cost to the wholesaler," "cost to the retailer" and "replacement cost." [1]

The Act further provides in effect:

In the absence of proof of a lesser cost, the cost as defined in the Act means six (6%) per cent above invoice or replacement cost less trade discounts, except cash discounts, plus freight charges. At this point it should be noted that only an injunction against the defendants, and each of them for alleged violation of the Act is prayed for and no criminal penalties are sought to be imposed against the defendants.

The lower court's ruling and judgment were based largely on its conclusions that (1) the statutory presumption of a 6% cost is arbitrary, unreasonable and unconstitutional, that it unconstitutionally shifts the burden of proof to the defendants, and that it constitutes price fixing by the legislature, (2) the statutory definitions of "cost" and "replacement cost" exclude certain legitimate costs and discounts and place an "unreasonable burden" on the merchant requiring him to determine whether or not his prices are in violation of the Act, (3) the prohibition of the intent to "unfairly divert trade from a competitor" or "injure a competitor" is unconstitutionally vague and ambiguous, and (4) the phrase "legal price of a competitor" is unconstitutionally vague, ambiguous and unenforceable because it requires a merchant to determine at his peril whether or not the competitor's price is legal.

As heretofore stated this appeal involves a direct challenge to the constitutionality of the Unfair Practices Act. It appears the conduct of the defendants did constitute a violation of the Unfair Practices Act, which, however, the trial court found did not constitute a punishable offense because the Unfair Practices Act violated the Fourteenth Amendment to the United States Constitution and the alleged sections of the State Constitution.

An alleged violation of the Constitution must be of a specific provision of a particular article thereof. We have repeatedly held in order to be declared unconstitutional, the statute must clearly vio-

---

1. Sec. 13–5–7 U.C.A.1953, as amended by Ch. 19, 1955, Laws of Utah and as amended by Ch. 22, Laws of Utah 1965.

late some constitutional provision, and further, the violation must be clear, complete and unmistakable.[2]

The only section of the Fourteenth Amendment applicable to this case would be that "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of * * * property without due process of law * * * nor deny any person within its jurisdiction the equal protection of the laws."

The only pertinent provisions of the State Constitution are:

Any combination by individuals, corporations or associations, having for its object or effect the controlling of the price of any products of the soil, or of any article of manufacture or commerce, or the cost of exchange or transportation, is prohibited, and hereby declared unlawful, and against public policy.

No person shall be deprived * * * of property * * *[3] without due process of law.[4]

No bill * * * or law impairing the obligation of contracts shall be passed.[5]

All men shall have the inherent and inalienable right * * * to acquire, possess and protect property.[6]

All laws of a general nature shall have uniform application.[7]

Have any of the quoted provisions as above set forth been violated by the Utah Unfair Practices Act? In answering this question there are some fundamental principles we should keep in mind.

The first is that the legislature of the state is not a government of powers limited to those expressly granted, as is the federal government, (as the federal Constitution says, but is gradually being eroded away). The legislature of the state, which represents the people and thus the sovereign, has all of the residuum of power of government, except only as expressly restricted by the Constitution.[8] In order to preserve the independence and the integrity of the three branches of government, it is of the utmost importance that the judicial exercise restraint and not intrude into the legislative prerogative. It cannot strike down and nullify a legislative enactment unless it is clearly and expressly prohibited by the Constitution or in violation of some plain mandate thereof. The court must make every reasonable presumption which

2. Gubler v. Utah State Teachers' Retirement Board, 113 Utah 188, 192 P.2d 580, 2 A.L.R.2d 1022; Snow v. Keddington, 113 Utah 325, 195 P.2d 234; State v. Nielsen, 19 Utah 2d 66, 426 P.2d 13.
3. Art. XII, Sec. 20, Utah Constitution.
4. Art. I, Sec. 7, Utah Constitution.
5. Art. I, Sec. 18, Utah Constitution.
6. Art. I, Sec. 1, Utah Constitution.
7. Art. I, Sec. 24, Utah Constitution.
8. See Wood v. Budge, 13 Utah 2d 359, 374 P.2d 516.

favors constitutionality.[9] The courts have a duty to investigate and, insofar as possible, discover any reasonable avenues by which the statute can be upheld. Every reasonable doubt must be resolved in favor of the constitutionality of the statute.[10] Those who assert the invalidity of the statute must bear the burden of showing it to be unconstitutional.[11]

It has been argued that the purpose of statutes such as the Utah Unfair Practices Act is to preserve a competitive climate by preventing large business concerns through the unrestrained use of size and resources alone, from overwhelming and destroying their smaller competitors. These statutes it is claimed seek to preserve the right of a competitor to enter a market and compete with those already operating.

It has been further argued that unrestrained price cutting on a massive scale has had disastrous effect on the small independent retailer with limited resources. That the below cost selling has become a weapon in the fight for markets and customers, characterized by the deliberate use of below cost selling to undercut, overwhelm and destroy competition, all to the benefit and further enrichment of the big interests. It is further claimed that to correct the unscrupulous conduct of these vested groups it became necessary for government to adopt such unfair trade practices acts as the one here in question. Moreover the overwhelming weight of the more recent judicial decisions has been in favor of such legislation.[12]

There are those who maintain America has been built upon the principle of free enterprise which has been interpreted to mean the economic doctrine or practice of permitting private industry to operate with a minimum of control by government. Business, as commonly used and understood, is an inclusive term denoting those engaged in the production, consumption, exchange and distribution of commodities having material value. It has to do with the sale and purchase of real and personal property. Those so engaged are primarily concerned with financial gain resulting from the excess of returns over costs and expenditure in a given transaction or series of transactions. Economically, America is and has been such a system. There are two schools of thought contending, one asserting that over the years there has been general opposition to government control of busi-

9. Washington County v. State Tax Commission, 103 Utah 73, 133 P.2d 564; Keetch v. Cordner, 90 Utah 423, 62 P.2d 273, 108 A.L.R. 52; Newcomb v. Ogden City Public School Teachers' Retirement Commission, 121 Utah 503, 243 P.2d 941. Howe v. State Tax Commission, 10 Utah 2d 362, 353 P.2d 468.

11. State v. J. B. & R. E. Walker, Inc., 100 Utah 523, 116 P.2d 766.

12. Burt v. Woolsulate, Inc., 106 Utah 156, 146 P.2d 203; 128 A.L.R. 1126.

10. Salt Lake City v. State Tax Commission, 11 Utah 2d 359, 359 P.2d 397;

ness and general approval of the free enterprise system, the other claiming that great abuse has been made of the practice of permitting private industry to operate with little or no control by government.

The common ground upon which both may stand is the recognition that the group, constituting the whole populace, must be concerned with not only the individual's right, but also the safety and welfare of the group.

■ Cognizant of the contending forces, we must realize the field in which the court operates is limited. It does not lie within the province of the court to pass upon the wisdom, the need or the desirability of any legislation, nor to choose between two opposing political philosophies. It is not the function of the court to ameliorate the conditions of those in want, nor is its purpose to solve the economic, social or religious problems and dissensions which beset society. The court is not the conscience of the State or its people. It does not fall within its duty to express the personal desires or philosophy of its personnel.

■ The court does not determine who is large or who is small nor who is rich or who it poor. It operates upon a state of facts to effect justice between contending parties and interests all in accordance with established legal and equitable rules and regulations.

■ The court must voluntarily restrain itself by holding strictly to an exercise and expression of its delegated or innate power to interpret and adjudicate. We have been called upon to state what the law is and not what we think it should be. The question as to whether the statute in question is or is not economically sound or beneficial is not for the court to decide, but such an inquiry is a matter for the legislature.[13] The only question for us is to determine whether or not the particular statute in question is constitutional.

■ If, based upon the facts of this case, any one of the lower court's conclusions is inevitable, then its judgment must be sustained, but if a different determination can be reasonably and fairly reached in each instance then the matter is tentative and should be decided on what could be a varied conclusion.

■ We agree with appellant's position that the lower court's conclusion that the 6% presumption provides no real alternative because it is "impractical" or "impossible" to prove actual cost under defendant's operating conditions, is neither supported by the evidence, nor is it in accordance with the guidelines this court has established in determining the constitution-

13. Wholesale Tobacco Dealers Bureau of Southern California v. National Candy & Tobacco Co., 11 Cal.2d 634, 82 P.2d 83, 118 A.L.R. 486.

**440**

ality of a statute. We are of the opinion the trial court erred in holding the Act requires the cost must be exact. All the statute requires is a cost figure arrived at by reasonable accounting methods. A statute is not to be declared invalid because of difficulty in applying its provisions.[14] We think the Act is sufficiently clear to require compliance.[15] The constitutionality of a statute is not to be decided on questions of inconvenience, or difficulty in application of a cost standard.[16]

▆ It is argued by respondents that the rebates and free goods given to retailers, as was done in this case on exact computation and allocation, could not be made. However, it is clear that a reasonably accurate allocation of those items could be made for purposes of compliance with the Act which is all that is required by the Act.

▆ We hold that even if compliance with the Act would result in an increase of prices, the economic effect of its operation cannot be considered when ruling on its constitutionality. We have held "neither the economic effects nor the moral effect of our determination has any place in our deliberations." [17]

▆ The lower court erred in holding the Act unconstitutional because it provides criminal penalties and therefore the 6% presumption unconstitutionally shifts the burden of proof to the defendant. It should be noted that this is a civil action and not a criminal case. No attempt has been made to invoke the criminal provisions of the statute against the respondents and therefore criminal standards should not be applied. We have heretofore made it clear that a party has no standing to question the validity of criminal sanctions which have not been invoked against him.[18] But even if the criminal standard were applied the defendants herein would then have the responsibility to produce evidence, after the prima facie case had been shown. It is even constitutionally permissible in a criminal case to include as an element of the prima facie case the failure of the defendant to explain certain conduct.[19]

The lower court's conclusion that the 6% presumption constitutes price-fixing by the legislature, because there is no realistic alternative to the 6% presumed cost, cannot be sustained for two reasons: (1) There is no evidence as to whether there is a real

14. People v. Kahn, 19 Cal.App.2d Supp. 758, 60 P.2d 596.
15. State v. Langley, 53 Wyo. 332, 84 P. 2d 767; People v. Pay Less Drug Store, 25 Cal.2d 108, 153 P.2d 9.
16. Robert H. Hinckley, Inc. v. State Tax Commission, 17 Utah 2d 70, 404 P.2d 662; McElhone v. Geror, 207 Minn. 580, 292 N.W. 414.
17. Utah State Fair Ass'n v. Green, 68 Utah 251, 249 P. 1016.
18. State v. Barlow, 107 Utah 292, 153 P. 2d 647.
19. State v. Little, 5 Utah 2d 42, 296 P.2d 289; State v. Wood, 2 Utah 2d 34, 268 P.2d 998.

alternative of lesser cost, and (2) the legislature has not been precluded by the Utah Constitution for price-fixing.

However, the Unfair Practices Act is not a price-fixing measure. We further hold the provisions of Article XII, Section 20, do not apply to the legislature.[20]

It has been pointed out innumerable times that in seeking the correct application of statutes and constitutional provisions we look to the circumstances which brought them into being and the purpose sought to be accomplished. [21] Neither in the circumstances which gave rise to the constitutional provision, nor in the purpose it was intended to serve, is there any reason to believe that it was intended to be a restriction upon the legislature to prevent it from enacting a statute the purpose of which was to protect the public from business abuses. It seems inescapably clear that the constitutional provision was intended to prevent private business from engaging in combinations to fix prices to the disadvantage of the public.[22] In no reasonable view of the situation can it be said that the businesses of the State, by conforming to the requirements of law, are entering into a "combination" for the control of prices.

We do not suggest that a purpose to divert or capture a competitor's business is wrong or unethical. It is perfectly legitimate so long as it is not carried out unfairly. The legislature simply has declared it unfair to accomplish it through giving away goods or services or selling them for less than cost.[23]

A sale by the respondents at below cost with the limitation of quantity obviously disregards both profit and turnover which combined constitute the whole purpose of being in business. Even the most simple analysis would then lead all reasonable persons to conclude that the respondents had an intent by this activity to attract customers into the store upon the expectation that they would purchase other items not marked below cost. Nor can the respondents explain this activity on the basis of an overstock of merchandise, since the limitation is inconsistent with a motive to clear out an oversupply of stock. If such were the intent they should be anxious to sell as much of the stock as possible to each customer.

We disagree with the lower court's ruling that the statutory definition of cost

20. Riggins v. District Court, 89 Utah 183, 51 P.2d 645.
21. Snyder v. Clune, 15 Utah 2d 254, 390 P.2d 915.

22. In this respect this case differs from General Electric Company v. Thrifty Sales, Inc., 5 Utah 2d 326, 301 P.2d 741.
23. State v. Potello, 40 Utah 56, 119 P. 1023.

is vague, ambiguous and arbitrary. We think this conclusion is contrary to the evidence and is not in accordance with the weight of authority.

Likewise we disagree with the trial court decision that the terms "unfairly diverting trade from a competitor" and "injuring a competitor" are vague and ambiguous. The terms may present difficulties in application, but such difficulty is not sufficient to hold the Act unconstitutional. In fact, the said terms have come to have definite and certain meanings in the practice of wholesale and retail business.

The Act in question is not so vague, indefinite or uncertain in the respects claimed as to deny due process, but it is a valid exercise of the police power.[24]

In defining economic offenses there may be latitude in setting up the exact nature of the prohibited acts.[25]

Due process of law in each particular case means such an exercise of the powers of the government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs.[26] We hold such compliance has been adhered to herein.

We hold that the Act in question has and does comply with the requirements of the Constitution of this State and the Constitution of the United States.

The case is remanded to the district court for the enforcement of the Act.

CALLISTER and TUCKETT, JJ., concur.

CROCKETT, C. J., concurs in the result.

ELLETT, Justice (dissenting):

I dissent. Article XII, Sec. 20, of the Utah Constitution provides:

Any combination by individuals, corporations, or associations, having for its object or effect the controlling of the price of any products of the soil, or of any article of manufacture or commerce, or the cost of exchange or transportation, is prohibited, and hereby declared unlawful, and against public policy. The Legislature shall pass laws for the enforcement of this section by adequate penalties, * * *.

The defendants could not by an agreement among themselves compel each other to charge at least six per cent more than cost when an article was sold at retail. That would clearly be in violation of the constitutional provision above set out.

---

24. Borden Co. v. Thomason, Mo., 353 S.W. 2d 735.

25. Nash v. United States, 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232.

26. Cooley Const.Lim. 441.

It is the duty of the legislature to pass laws for the *enforcement* of the provisions of Article XII. It seems clearly unconstitutional for the legislature to pass a law *compelling* the defendants (and every other merchant) to do that which would be unconstitutional for them otherwise to do.

The main opinion says: " * * * [T]he provisions of Article XII, Section 20, do not apply to the legislature," and cites the case of Riggins v. District Court, 89 Utah 183, 51 P.2d 645, in support of the statement. Riggins was a case brought to prohibit the State Liquor Control Commission from having injunctions issued against plaintiff and others restraining them from selling liquors. It was contended therein that the Liquor Control Act violated Article XII, Sec. 20, in that it gave to the State of Utah the exclusive right to sell liquor and fix the price thereof without any competition.

This court after setting forth the provisions of Article XII, Sec. 20, as above, said, "It is difficult to perceive that the framers of the Constitution intended that such provisions should apply to the state itself."

That statement was made concerning the entrance of the state into the liquor business and is no authority for saying that the legislature can require that others do that which the Constitution says they may not do.

In 1937 the legislature of the State of Utah undertook to regulate retail prices by enacting a "Fair Trade Act" (Chapter 20, Laws of Utah 1937), which provided that when a manufacturer of goods entered into a contract with one person in the State of Utah to sell its goods at a certain price, all other retail merchants must sell at that same price.

In the case of General Electric Company v. Thrifty Sales, Inc., 5 Utah 2d 326, 301 P.2d 741, all of the arguments as to why the statute was good or bad for the people of Utah were set out fully. In holding that the statute was in conflict with Article XII, Sec. 20, of our Constitution, this court in a unanimous decision said at page 341 of the Utah Reports, at page 751 of 301 P.2d:

The difficulty with the type of "price fixing" here in question, even if it were for the salutary purposes contended by the plaintiff, whether it be a little or a lot, is that it is a violation of our Constitution. It is like sin: a little sin, if properly so classified, is just as definitely sin as a great quantity of it, and hardly to be approved under the pretext that it is so small in amount that it can really be regarded as a virtue.

Although we are aware of the fact that all doubts should be resolved in favor of constitutionality, it nevertheless appears from the interdiction against any "combination * * * having for its object or effect the controlling of the price

* * * of any article of manufacture * * *" that the framers simply did not want price fixing by any combination. We see no reason which would impel us to ignore nor to vary from the plain import of the words of the Constitution, even though events may have occurred which probably were not foreseen at the time the provision was adopted. * * *

While the Thrifty Sales case is not exactly the same as the instant one, nevertheless each statute when enforced would have a tendency to stifle competition and to fix prices of retail sales. The Fair Trade law provided that the retail selling price be not less than the price fixed by the manufacturer, while the statute denominated "Unfair Practices Act" provides that the retail selling price be not less than cost plus six per cent.

Any combination, whether entered into voluntarily or compelled by law, which has for its object or effect the controlling of the price of any product of the soil or of any article of manufacture or commerce is unconstitutional in that it would be a violation of Article XII, Sec. 20, of our Constitution.

I would affirm the judgment of the lower court.

HENRIOD, J., does not participate herein.