Leo C. DIEHL, d/b/a Diehl's Cut Rate Grocery of Collinsville and Diehl's Food-Liner of Skiatook, and Leo C. Diehl, individually, Plaintiff in Error,

v.

MAGIC EMPIRE GROCERS ASS'N, an Oklahoma Corporation, Defendant in Error.

No. 40030.

Supreme Court of Oklahoma.

Oct. 27, 1964.

Rehearing Denied Jan. 19, 1965.

Application for Leave to File Second Petition for Rehearing Denied Feb. 23, 1965.

LeRoy Blackstock, Tulsa, for plaintiff in error.

W. Timothy Dowd, Tulsa, for defendant in error.

WILLIAMS, Justice.

The question for our determination in this appeal is whether the judgment of the trial court permanently enjoining defendant from violating the Unfair Sales Act in the advertising, offering for sale and selling of groceries should be reversed as being clearly against the weight of the evidence. Our decision is that it should not.

The action from which this appeal arose was initiated by defendant in error Magic Empire Grocers Association, an Oklahoma corporation, as plaintiff, against plaintiff in error, Leo C. Diehl, d/b/a Diehl's Cut Rate Grocery of Collinsville, and Diehl's Food-Liner, Skiatook and Leo C. Diehl, individually, as defendant. Plaintiff sought to enjoin defendant from advertising, offering for sale and selling groceries below cost in violation of the Oklahoma Unfair Sales Act, 15 O.S.1961 § 598.1–598.11. Continued reference to the parties is as they appeared in the trial court.

In his answer defendant denied that "he was engaged in a course of conduct which is in violation of the Unfair Sales Act * * * of Oklahoma."

In the trial below, at the close of plaintiff's evidence, defendant demurred thereto. The trial court overruled such pleading. Defendant stood on his demurrer and offered no evidence.

On October 17, 1961, the trial court entered judgment for plaintiff against the defendant for a permanent injunction as in plaintiff's petition prayed for, permanently enjoining defendant, his agents, servants and employees "from violating the terms of the Unfair Sales Act of the State of Oklahoma, being particularly Title 15, Oklahoma Statutes, 1949, §§ 598.1–598.11 inclusive * * *". From that judgment and order overruling its motion for a new trial, defendant appeals.

For reversal defendant advances three propositions as follows:

"Trade Association, seeking injunctive relief under Oklahoma Unfair Sales Act must prove alleged violation by evidence that is clear, cogent, and convincing.

"In order to entitle one to injunctive relief under the Oklahoma Unfair Sales Act, plaintiff Trade Association must prove the effects or effect of the alleged violation upon the person or persons complained of.

"The mere fact of competition does not entitle one whose rights are not invaded to enjoin the unfair acts of a competitor."

Defendant states that "all of the above propositions will be discussed in a single argument."

Defendant argues that: "The real issue in this appeal goes to the sufficiency of the evidence constituting a prima facie case on behalf of the trade association entitling it to injunctive relief as provided by Section 598.5 of the Act. The Defendant argues in this appeal that the Plaintiff did not prove all of the elements of a prima facie case in that (1) there was no evidence that a sale was ever made at reduced prices by the Defendant; (2) there was no evidence the handbills were ever distributed by anyone nor that anyone ever read the handbills, and (3) there was no evidence as to the actual price paid by the Defendant for articles sold and (4) there was no evidence as to the amount of the markup allowed; (5) there was no evidence that the groceries purchased from the Hale Halsell Grocery Company were the same groceries which had been allegedly advertised for sale; (6) there was no evidence as to what other grocers, if any, were affected by the sale of groceries below cost by the Defendant."

■ Under the Unfair Sales Act, it was not necessary for plaintiff to show that a sale was made by defendant at unlawfully reduced prices. Title 15 O.S.1961 § 598.3 provides:

"It is hereby declared that any *advertising,* offer to sell, or sale of any mer-chandise, either by retailers or whole-salers, at less than cost as defined in this Act with the intent and purpose of inducing the purchase of other merchandise or of unfairly diverting trade from a competitor or otherwise injuring a competitor, impair and prevent fair competition, injure public welfare, are unfair competition and contrary to public policy and the policy of this Act, where the result of such advertising, offer or sale is to tend to deceive any purchaser or prospective purchaser, or to substantially lessen competition, or to unreasonably restrain trade, or to tend to create a monopoly in any line of commerce." (Emphasis ours.)

Mr. Bohnenkamp testified that he printed advertising circulars for Diehl's Food Liner, Skiatook, which offered certain grocery items for sale on the following sets of dates: January 5th through 9th; January 12th through 16th; January 19th through 23rd; and January 26th through 30th. He further testified that he printed advertising circulars for Diehl's Cut-Rate Grocery of Collinsville, advertising groceries for sale during the following periods: January 12th through 14th; January 26th through 28th; and February 2nd through

4th. He testified that he was furnished copy for the ads by defendant's stores and was paid for the ads by such stores.

Mr. Fusselman, manager of defendant's store at Skiatook, testified that the least number of such weekly circulars he had printed in 1961 was 2100; that after he received the circulars some were sent out by mail, some were sent out by small boys to be delivered door to door and some were left for customers to get in the stores.

Mr. Halford, manager of defendant's store in Collinsville, testified that in January of 1961 he had 3000 of the circulars hereinabove described printed; that "some of them were mailed, the rest were sent out by bill boys."

It is to be noted that sub-section (a) of the second section (598.2) of the Act in question defines "cost to the retailer" as including freight charges, cartage costs, taxes "and (4) a markup to cover a proportionate part of the cost of doing business, which markup, in the absence of proof of a lesser cost, shall be six per cent (6%) of the cost of the retailer as herein set forth after adding thereto freight charges and cartage but before adding thereto a markup."

Section 598.5 paragraph (c) of the Unfair Sales Act provides:

"Evidence of advertisement, offering to sell, or sale of merchandise by any retailer or wholesaler at less than cost to him, shall be prima facie evidence of intent to injure competitors and to destroy or substantially lessen competition."

Plaintiff's exhibit "1" was one of the circulars issued by the Skiatook store to which we have referred hereinabove. Three of the items offered for sale therein for the period of January 5th through January 9th were Jello, Northern Tissue and Miracle Whip. Jello was offered for sale at 7 packages for .49¢, the tissue 7 rolls for .49¢ and Miracle Whip for .49¢ per quart.

Plaintiff's exhibit "A" shows that on December 20, 1960, defendant's Skiatook store had purchased from Hale-Halsell Grocery

Company Jello at the rate of 7.8¢ per package and Miracle Whip at .49¢ per quart. On such date and on January 4, 1961, defendant purchased from Hale-Halsell Northern Tissue at the rate of 7.6¢ per roll.

Plaintiff's evidence further showed that in the circulars for January 12th through January 16th, it advertised certain items for sale at approximately the prices it had paid Hale-Halsell for them. This resulted in an advertised price below the 6% markup required by the Oklahoma Uniform Sales Act, supra, on the following articles: Milnot, Home Maid Biscuits, Vigo, Jello and Miracle Whip. For the period of January 19th through January 23rd, Vigo, Miracle Whip, Jello and Milnot were advertised in such circulars for sale at prices approximating the cost and below the required markup. For the period of January 26th through the 30th, the same was true as to the items of Jello, Milnot, Vigo and Northern Tissue.

The Collinsville store in its circular listing items for sale for the period of January 12th through 14th offered C & H Sugar and Milnot at prices as low as or less than those paid Hale-Halsell and therefore below the required 6% markup. The same was true for the period of January 26th through 28th for the items of Milnot and Miracle Whip and for the period of February 2nd through 4th for sugar and Milnot.

■ From the above recitation, we determine that there was evidence of effect that defendant, through advertising circulars, offered for sale certain items above-enumerated in violation of the Unfair Sales Act, supra; that such circulars were distributed to prospective purchasers in the areas served by defendant's respective stores; that it was not necessary for plaintiff to prove that the identical groceries purchased from Hale-Halsell were the ones advertised for sale in view of the fact that the brands of the items offered for sale in violation of the Unfair Sales Act were identical to the brands purchased from Hale-Halsell and that such purchases were made immediately prior to the distribution of the circulars. For example, Northern Tissue was purchased from

Hale-Halsell and Northern Tissue was offered for sale. The same applies to Home Maid Biscuits, Vigo, Milnot, Jello, C & H Sugar and Miracle Whip.

There inheres in the judgment of the trial court a finding that the acts of defendant's servants in advertising the foregoing items for sale at the unlawfully reduced prices indicated, absent any showing to the contrary on his part, were in violation of the statute.

■ In the case of Safeway Stores v. Oklahoma Retail Grocers Ass'n, Okl., 322 P.2d 179, 182, 70 A.L.R.2d 1068, with reference to the preventing of unfair sales practices by appropriate remedy, this Court said:

" * * * (A)ctions for injunctions may be filed by a trade association for the benefit of all its members."

The Court there further said:

"We are of the opinion that this injunction granted by the trial court against Safeway was proper, because under our statute the appropriate remedy was by injunction and not by retaliation or retaliatory action, such as was practiced by Safeway. In this respect the judgment of the trial court is affirmed."

■ In the case of Murphy Inc. v. Banfield, Okl., 363 P.2d 942, 945, this Court said:

"In a suit of equitable cognizance, this Court will examine the entire record and weigh the evidence, but unless the decree of the lower court is found to be clearly against the weight of the evidence or contrary to established principles of equity jurisprudence, it will not be disturbed on appeal."

In the case of Berland's Inc., of Tulsa v. Northside Village Shopping Center, Inc., Okl., 378 P.2d 860, we held:

"In actions of equitable cognizance this court will examine the entire record and weigh the evidence, but unless the judgment rendered is clearly

against the weight of the evidence it will not be disturbed on appeal."

The judgment of the trial court is affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and DAVISON, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.