GLENN SMITH OIL
COMPANY, Appellee,

v.

H.R. SHEETS, d/b/a Sheets Oil
Company, Appellant.

No. 60028.

Supreme Court of Oklahoma.

July 16, 1985.

D.D. Hayes, Muskogee, for appellee.

Stephen J. Scherer, Muskogee, for appellant.

James E. Frasier, Tulsa, for Mako, Inc.

Merrilyn L. Blackburn, Oklahoma City, for Tommy Oil, Inc.

Bradford S. Baker, Tulsa, for John E. Snider, amicus curiae.

Julian K. Fite, Muskogee, for Atex Oil Company of Texas.

ALMA WILSON, Justice.

This appeal concerns retail oil merchants engaged in the sale of gasoline products. In February and March, 1983, Muskogee, Oklahoma experienced a city-wide "gas war". During this period, H.R. Sheets d/b/a Sheets Oil Company [Appellant] admittedly sold gasoline at a price below "cost to the retailer", as defined by the Oklahoma Unfair Sales Act, 15 O.S.1981 §§ 598.1 *et seq.*, an Act slated to define and prohibit unfair sales practices with a view to preventing the advertising, offering for sale or the selling of *merchandise* below cost for the purpose of injuring competitors, destroying, or substantially lessening competition. The Act, in pertinent part, thus provides:

§ 598.2 Definitions

(a) When used in this Act, the term *"cost to the retailer"* shall mean the invoice cost of the merchandise to the retailer or the replacement cost of the merchandise to the retailer, whichever is the lower; less all trade discounts except customary discounts for cash; to which shall be added (1) freight charges not otherwise included in the invoice cost or the replacement cost of the merchandise as herein set forth, and (2) cartage to the retail outlet if done or paid for the retailer, which cartage cost, in the absence of proof of a lesser cost, shall be deemed to be three-fourths of one per cent (¾ of 1%) of the cost to the retailer as herein defined after adding thereto freight charges but before adding thereto cartage, and taxes, (3) all state and federal taxes not heretofore added to the cost as such, and (4) a markup to cover a proportionate part of the cost of doing business, which markup, in the absence of proof of a lesser cost, shall be six per cent (6%) of the cost of the retailer as herein set forth after adding thereto freight charges and cartage but before adding thereto a markup.

(e) The terms *"sell at retail"*, "sales at retail", and "retail sale" shall mean and include any *transfer* for a valuable consideration made *in* the ordinary course of *trade or* in the usual prosecution of the seller's *business of* title to *tangible personal property* to the purchaser for consumption or use other than resale or further processing or manufacturing. (Emphasis added)

.    .    .    .    .

§ 598.3 *Sales below cost* prohibited in certain cases

It is hereby declared that any advertising, offer to sell, or sale of any merchandise, either by retailers or wholesalers, at less than cost as defined in this act with the intent and purpose of inducing the purchase of other merchandise or of unfairly diverting trade from a competitor or otherwise injuring a competitor, impair and prevent fair competition, injure public welfare, are unfair competition and contrary to public policy and the policy of this act, where the result of such advertising, offer or sale is to tend to deceive any purchaser or prospective purchaser, or to substantially lessen competition, or to unreasonably restrain trade, or to tend to create a monopoly in any line of commerce.

Glenn Smith Oil Company [Appellee] petitioned the trial court for injunctive relief against its competitor, Appellant herein, to restrain the retail sale of gasoline below cost in contravention of the legislative policy proscribed by the above referenced Act, and prohibited thereby. Appellee alleged substantially that Appellant's below cost gasoline sales were made with the intent, purpose and result of impairing and preventing lawful competition; that it had been irreparably injured by Appellant's violation of the Act; and that unless violation were restrained, it would be forced to either meet its competitor's illegal prices or lose business by reason of failure to meet such prices.

The facts developed at trial, and by stipulation, establish the following: At the time of the Muskogee gas war, the invoice cost of gas available to Appellee was between 80 and 82 cents per gallon with tax of 10.85 cents per gallon. Standard freight on the gas from Tulsa, Oklahoma to Muskogee was 1.65 cents per gallon. Based upon these factors, the statutory "cost to the retailer" for gasoline ranged from 92 cents to 94 cents per gallon. Accordingly, Appellant stipulated that during the relevant time period he did engage in the sale of gasoline below the statutory cost to the retailer. Appellee was then selling its gasoline at 99.9 cents per gallon. Appellant, at the same time, sold gasoline at 91.9 cents per gallon. Appellee presented evidence that during this period, its gasoline sales dropped approximately fifty percent. Appellee further submitted evidence that the parties' business locations stood in close proximity and each offered unbranded self-service gasoline. Appellee thus considered Appellant to be its strongest competitor and attributed its drop in sales to Appellant's disregard of the legislative prohibition against the retail sale of merchandise below cost, as defined by the Oklahoma Unfair Sales Act, *supra*. Appellant, however, contended at trial, as on appeal, that the sale of gasoline cannot be said to constitute the sale of merchandise within the meaning of the Oklahoma Unfair Sales Act; and, citing as dispositive *Williams v.*

*Standard Oil Company,* 278 U.S. 235, 49 S.Ct. 115, 73 L.Ed. 287 (1929), urged that the Act is unconstitutional as applied to the sale of gasoline. The trial court disagreed and upheld the constitutionality of the Unfair Sales Act as applied to the sale of gasoline, which in its opinion is merchandise within the meaning of the Act:

"The Court has no problem in applying its experience and understanding of common affairs to realize that when two businesses in competition find one at substantially lower price for the same product, the one that is selling it cheaper is going to sell more of it, assuming the service or products sold are comparable. And the one who is in competition with him is going to sell less, and therefore be financially injured. I have no trouble at all finding that Mr. Glenn Smith is financially damaged by his competitor selling gas eight cents cheaper, within a few blocks under similar sales circumstances.

The basic question is whether or not the sale of gasoline is the sale of merchandise. I'm not going to disturb the decisions of the Supreme Court upholding the constitutionality of the statute. I think there's a public purpose involved in protecting small businessmen from unfair competition, and I think the Legislature has gone about to do that. And I agree with the philosophy of our Supreme Court in allowing the Legislature to so regulate the conduct of business, in the interest of bigger businessmen not squeezing out the smaller businessmen.

The decision is whether or not gasoline is merchandise.... I think that the Oklahoma Legislature passed a broad Act making it illegal to sell merchandise below cost, defined cost, and if nobody else has defined gasoline in this state as merchandise up to now, I'm prepared to do so, and let Mr. Sheets, if he desires, take an appeal to a higher court."

The Court of Appeals found the trial court's analyses persuasive and affirmed. Appellant then sought certiorari in this Court to obtain review of the unpublished opinion of the Court of Appeals. Appellant

complains that the Court of Appeals has decided questions of substance and of great importance to the retail oil and gas industry in the State of Oklahoma and in deciding said questions failed to consider substantial points of law, namely, *Williams v. Standard Oil Company, supra.* We granted certiorari to consider a case of first impression and a constitutional question: whether the Unfair Sales Act is constitutional as applied to the sale of gasoline, as "merchandise" thereunder.

This Court has twice ruled that the Unfair Sales Act is constitutional.[1] In *Adwon v. Oklahoma Retail Grocers Ass'n, Inc.*, 204 Okl. 199, 228 P.2d 376 (1951), this Court stated that laws are presumed to be constitutional; and, that:

> "Examination of the 1949 Act [Oklahoma Unfair Sales Act] does not disclose that it contains any provision held invalid or unconstitutional in the decisions cited and relied upon by the defendant, or that any of its provisions are clearly, palpably, and plainly inconsistent with the provisions of the Constitution, or of the Constitution of the United States. We therefore indulge the presumption stated ... and hold the law valid as against the objections urged by the defendant." *Id.* at 379.

The Act was again held constitutional in *Safeway Stores, Inc. v. Oklahoma Retail Grocers Assoc.*, 322 P.2d 179 (Okl.1958) *aff'd* 360 U.S. 334, 79 S.Ct. 1196, 3 L.Ed.2d 1280 (1959). Amicus curiae, however, asks this Court to overrule these decisions upholding the Act's constitutionality in view of lapse of time. We decline to do so. It is asserted that economic conditions and views behind the enactment of the Unfair Sales Act have changed. However, the wisdom or necessity of the Act is not a matter to be decided by this Court. The State Legislature alone is entrusted by the citizens of this state to judge the wisdom of legislative enactments. *Adwon, supra,* 228 P.2d at 378. We find no constitutional basis upon which to disturb our prior decisions and reaffirm the constitutionality of the Unfair Sales Act as applied therein.

It is nevertheless argued that since all prior decisions under this Act have concerned the sale of groceries, this Act is unconstitutional as applied to the sale of gasoline. The case of *Williams v. Standard Oil Company, supra,* is cited as dispositive of this point. *Williams* arose in 1929 when the state of Tennessee enacted a statute that *fixed* prices at which gasoline could be sold within that state. The United States Supreme Court stated:

> "It is settled by recent decisions of this court that a state Legislature is without constitutional power to *fix prices* at which commodities may be sold, services rendered or property used, unless the business or property involved is 'affected with a public interest'.... *Gasoline is one of the ordinary commodities of trade,* differing, so far as the question here is affected, in no essential respect from a great variety of other articles *commonly bought and sold by merchants and private dealers in the country.* The decisions referred to above make it perfectly clear that the business of dealing in such articles, irrespective of its extent, does not come within the phrase 'affected with a public interest.' Those decisions control the present case." (citations ommitted) *Id.,* 278 U.S. at 239, 49 S.Ct. at 116. [Emphasis added]

■ We agree that gasoline is one of the ordinary commodities of trade differing in no essential respect from a great variety of other articles commonly bought and sold by merchants, and therefore constitutes "merchandise" within the meaning of the Oklahoma Unfair Sales Act.[2] However, we find *Williams* inapplicable to the present case.

---

1. A prior version of this Act was held unconstitutional in *Englebrecht v. Day,* 201 Okl. 585, 208 P.2d 538 (1949), because it lacked any requirement of intent on the part of the seller. Our Legislature in 1949 amended the Act providing for an intent requirement and the amended Act was later held constitutional in *Adwon v. Oklahoma Retail Grocers Ass'n., Inc., supra.*

2. The Oklahoma Unfair Sales Act, herein, does not specifically define "merchandise". *But, see,* § 598.2(e) of the Act, *supra.* Merchandise, by

*Williams* is, first, on its face factually distinguishable in that it involved a *price-fixing statute*, while we are presently concerned with a *sales-below-cost statute.* Regulation of sales below cost, as opposed to specific price-fixing, has two major purposes: (1) to prevent "loss leader selling (below-cost sales of particular items designed to lure the consumer into the store to purchase other goods at marked-up prices); and (2) to insure the viability of the small merchant who cannot afford to sell below cost against a larger competitor who may sell below cost to drive weaker competitors out of the market. 54 *Am.Jur.2d Monopolies* § 666 (1971). Generally, regulatory statutes akin to our own Unfair Sales Act, *supra,* have been found to be constitutional as within the States' valid exercise of the police powers.[3]

■ Secondly, *Williams* has been superseded by subsequent authority.[4] The Supreme Court of the United States now clearly recognizes the authority of the states to *fix prices* or place regulatory controls on business. *Olsen v. State of Nebraska,* 313 U.S. 236, 61 S.Ct. 862, 85 L.Ed. 1305 (1941). The high Court is of the philosophy that the states are free to adopt whatever economic policy may reasonably be deemed to promote public welfare, and to enforce that policy by legislation adapted to its purpose. *Nebbia v. New York,* 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934). We accordingly find the Oklahoma Unfair Sales Act, *supra,* contravenes nei-

ther the Fourteenth Amendment to the United States Constitution nor Article 2, Sections 2 and 7 of our own State Constitution, as urged by Appellant, but is within the valid exercise of this State's police power.

■ Appellant finally urges that Appellee provided insufficient proof of its intent to impair and prevent fair competition. In this regard, the Act contains the following provision at § 598.5(c):

"Evidence of advertisement, offering to sell, or sale of merchandise by any retailer or wholesaler at less than cost to him, shall be prima facie evidence of intent to injure competitors and to destroy or substantially lessen competition."

Prima facie evidence is such evidence as in the judgment of law is sufficient to establish a fact, and if not rebutted, remains sufficient to establish that fact. *Rotramel v. Public Service Co.,* 546 P.2d 1015 (Okl. 1975). The only rebuttal evidence offered by Appellant was that he sold gasoline during the gas-war below cost to meet the illegal below-cost prices of competitors. While the Act provides that a sale may be made below cost if made in good faith to meet the price of a competitor selling the same goods at cost to that competitor, 15 O.S.1981 § 598.7, a sale cannot be made below cost to meet the price of a competitor who is selling at an illegal price (a price below that competitor's cost). *Safeway Stores, supra,* 360 U.S. at 336–337, 79 S.Ct. at 1198–1199. Here, Appellant failed to ad-

---

ordinary definition, covers the objects of commerce or whatever is bought or sold in trade. *Webster's New International Dictionary* (1961). Moreover, it has been held that gasoline falls within the definition of merchandise, *Charleston Oil Co. v. Poulnot,* 143 S.C. 283, 141 S.E. 454 (1928); and, states with similar sales-below-cost statutes have applied their Acts to the sale of gasoline. *See, State v. Eau Claire Oil Co.,* 35 Wis.2d 724, 151 N.W.2d 634 (1967); *Flank Oil Co. v. Tennessee Gas Transmission Co.,* 141 Colo. 554, 349 P.2d 1005 (1960). Legislative intent to adopt a narrow definition of "merchandise" has not been manifest.

**3.** *See, e.g., Trade Commission v. Skaggs Drug Centers, Inc.,* 21 Utah 2d 431, 446 P.2d 958 (1968); *Simonetti, Inc. v. State,* 272 Ala. 398, 132

So.2d 252 (1961); *State v. Consumers Warehouse Market, Inc.,* 183 Kan. 502, 329 P.2d 638 (1958); *McElhone v. Geror,* 207 Minn. 580, 292 N.W. 414 (1940).

**4.** *Williams v. Standard Oil, supra,* was part of the so-called substantive due process decisions. The United States Supreme Court has since repudiated active interference with state business regulatory measures and accords great deference to state regulatory decisions. J. Nowak, R. Rotunda, J. Young, *Handbook on Constitutional Law,* 397–410 (1978). *See, e.g., Nebbia v. New York, supra; United States v. Carolene Products Co.,* 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938); *Olsen v. State of Nebraska, supra; City of New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976).

equately rebut the prima facie evidence of intent to injure competition.

The trial court's order of a permanent injunction is AFFIRMED.

SIMMS, C.J., DOOLIN, V.C.J., and HODGES, LAVENDER, HARGRAVE, OPALA, JJ., concur.

KAUGER and SUMMERS, JJ., disqualified.