**SO–LO OIL COMPANY, INC.,**
Plaintiff–Appellant,

v.

**TOTAL PETROLEUM, INC.,**
Defendant–Appellee.

No. 76856.

Supreme Court of Oklahoma.

May 19, 1992.

As Corrected May 22 and June 1, 1992.

Jennifer E. Irish, James W. Morris, James U. White, Jr., White, Coffey, Galt & Fite, Oklahoma City, for plaintiff-appellant.

Robert H. Gilliland, Jr., Robert Dace, Jon W. McLanahan, McAfee & Taft, Oklahoma City, for defendant-appellee.

OPALA, Chief Justice.

Pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.1991 §§ 1601–1611, the United States Court of Appeals for the Tenth Circuit certified for this Court's answer a question of law upon which there is no controlling Oklahoma precedent:

"Do the provisions of the Oklahoma Unfair Sales Act, Okla.Stat. tit. 15, §§ 598.1–598.11, especially § 598.3, apply to entities such as defendant, Total Petroleum, which not only produce and re-

fine petroleum products, but also sell those products at retail directly to the general public in competition with distributors such as plaintiff, So–Lo Oil Company?"

We answer the certified question in the negative.

## I

### THE ANATOMY OF FEDERAL LITIGATION

The plaintiff-appellant, So–Lo Oil Company [So–Lo], does business as So–Lo Speedy Lube and Car Wash in northwest Oklahoma City. It has been a retail distributor of petroleum products under the brand-name Apco for ten years. So–Lo buys these products wholesale from the defendant-appellee, Total Petroleum, Inc. [Total].[1] Total's operation is twofold: (1) it produces and refines products for wholesale distribution to retailers like Solo and (2) it sells the same products directly to the public from its own Vickers service stations. One of its Vickers stations is near So–Lo's northwest Oklahoma City location.

So–Lo's quest for injunctive relief and damages from Total for selling petroleum products "below cost" in violation of the Oklahoma Unfair Sales Act [the Act][2] failed at the litigation's earliest stage. The district court's dismissal rests on its ruling that a *manufacturer's* retail sales are not within the Act's purview.[3] On appeal So–Lo tendered the single issue certified for our answer: whether the Act applies to manufacturers who sell their own products on the retail market.[4]

---

1. The federal court has diversity jurisdiction because (1) Total is a Michigan corporation with its principal place of business in Colorado, (2) So–Lo is an Oklahoma corporation whose principal place of business is Oklahoma, and (3) the amount-in-controversy requirement has been met. 28 U.S.C. § 1332(a) and (c). All parties agree that Oklahoma law applies to this controversy.

2. 15 O.S.1981 §§ 598.1 et seq. The Act was recently carried into the most recent decennial compilation as 15 O.S.1991 §§ 598.1 et seq. No substantive changes were made.

3. So–Lo's other claims against Total were for (1) violation of Oklahoma anti-trust laws, 79 O.S.

1981 §§ 1–3, 81 & 85 and (2) breach of an implied contractual duty to deal with it fairly and in good faith. When the district court dismissed So–Lo's anti-trust causes, So–Lo dismissed its surviving contractual claim and appealed.

4. Total produces and refines petroleum products. In the interest of simplicity we refer to it throughout this opinion as a manufacturer. The appellate court expressly requested that we decide whether the Act covers manufacturers:

"We thus respectfully request the Oklahoma Supreme Court to focus on the narrow legal issue of the applicability of the Oklahoma Unfair Sales Act to manufacturers which en-

So–Lo contends Total has violated the Act because (a) Total meets the Act's definition of both wholesaler and retailer,[5] (b) the Act does not specifically exclude manufacturers and (c) Total sells products below "cost" as defined by "reasonable accounting principles."[6] It draws our attention to decisional law from another jurisdiction[7] in which a beer franchise fair dealing act was applied to an agreement between a franchisor and franchisee, even though the franchisee was a beer manufacturer in competition with the franchisor. So–Lo also relies on jurisprudence that construes various cost provisions of other states' unfair sales acts.[8]

Total argues the Act proscribes only those below-cost sales that are defined in the Act—namely, sales below "invoice costs" or "replacement costs."[9] It urges the Act's cost definition language limits enforcement to those in the horizontal distribution chain, i.e., wholesalers and retailers neither of whom manufactures the products they sell.[10] Total's bottom-line argument is that the legislature's failure to define production costs manifests an intent to exclude manufacturers from the Act's purview. *Expressio unius est exclusio alterius.*[11]

Significant differences between the statute here under review and the enactments considered in the decisions So–Lo urges us to follow[12] make the attempted analogy to

---

gage in retail sales of their products. A decision by the Oklahoma Supreme Court on our certified question is expected to govern the ultimate disposition of this case."

5. *See infra* notes 15 and 16 for the statutory definitions of wholesaler and retailer.

6. Total's costs cannot be calculated by reference to the Act's definitions because they are cast in terms of distribution cost.

7. *G. Heileman Brewing v. Stroh Brewery,* 308 Md. 746, 521 A.2d 1225 (1987), interpreting Md. Alco.Bev.Code Ann., Art. 2B, §§ 203A–203G (1981).

8. So–Lo calls our attention to the following cases, none of which precisely addresses the question before us: *State v. Rio Vista Oil, Ltd.,* 786 P.2d 1343 (Utah 1990); *Turnbull & Turnbull v. ARA Transportation, Inc.,* 219 Cal.App.3d 811, 268 Cal.Rptr. 856 (1990); *Hartsock–Flesher Candy Company v. Wheeling Wholesale Grocery Company,* 174 W.Va. 538, 328 S.E.2d 144 (1985); *Trade Commission v. Skaggs Ass'n,* 21 Utah 2d 431, 446 P.2d 958 (1968); *Borden Company v. Thomason,* 353 S.W.2d 735 (Mo.1962) (*en banc*); *Flank Oil Company v. Tennessee Gas Transmission Company,* 141 Colo. 554, 349 P.2d 1005 (1960) (*en banc*); *Dikeou v. Food Distributors Association,* 107 Colo. 38, 108 P.2d 529 (1940); *State v. Langley,* 53 Wyo. 332, 84 P.2d 767 (1938). So–Lo urges that, based on this jurisprudence, a trial court could simply apply "reasonable accounting principles" to determine a manufacturer's costs even though production costs are not defined in the Act. Most of these cases focus on whether the term "cost of doing business," within each state's particular cost definition, is constitutionally vague; most have answered the question in the negative. *We agree that general accounting methods may be appropriate to interpret a statutory cost definition, but this jurisprudence does not teach that accounting*

*rules may be fashioned to supply the definition where legislative silence prevails.*

9. The pertinent terms of 15 O.S.1981 § 598.2 define cost to the retailer as:

"(a) When used in this act, the term 'cost to the retailer' shall mean the *invoice cost of the merchandise to the retailer or the replacement cost of the merchandise to the retailer,* whichever is the lower; less all trade discounts except customary discounts for cash; to which shall be added (1) freight charges not otherwise included in the invoice cost or the replacement cost of the merchandise as herein set forth, and ....

"(c) When used in this act the term "replacement costs" shall mean the cost per unit at which the merchandise sold or offered for sale could have been bought by the seller at any time within thirty (30) days prior to the date of sale or the date upon which it is offered for sale by the seller if bought in the same quantity or quantities as the seller's last purchase of said merchandise. [Emphasis ours.]

\*   \*   \*   \*   \*   \*"

10. Total supports this contention with *Farmington Dowel Products Co. v. Forster Mfg. Co.,* 153 Me. 265, 136 A.2d 542 (1957), where another court refused to apply a similar unfair sales act—one that also lacked a production cost definition—to manufacturers.

11. This maxim of statutory interpretation means that *the expression of one thing is the exclusion of another. Newblock v. Bowles,* 170 Okl. 487, 40 P.2d 1097, 1100 (1935).

12. The Maryland Beer Franchise Fair Dealing Act, Md.Alco.Bev.Code Ann., Art. 2B, §§ 203A–203G (1981), was enacted to promote temperance in beer consumption. That act imposes specific restrictions on agreements between

other states' results inapposite.[13] Our inquiry here must focus on determining the outer purview of the Act in contest here.

## II

## THE OKLAHOMA UNFAIR SALES ACT

Oklahoma's Unfair Sales Act was enacted in 1949.[14] 15 O.S.1991 §§ 598.1–598.11. Its terms *define* and *prohibit* below-cost sales by retailers [15] and wholesalers.[16] The regulation's two major purposes are (1) to prevent "loss leader selling" (featured items priced below cost to entice customers into a store where other merchandise prices are inflated) and (2) to protect small merchants from large competitors capable of driving them out of business by below-cost sales.[17] Certain types of merchandise are excluded from the Act's reach—such as seasonal merchandise sold in bona fide clearance sales.[18] Private parties may en-

beer manufacturers and distributors and affords the parties certain protections. The net effect is to eliminate intrabrand competition among franchisees in a given territory. *Heileman, supra* note 7 at 1227–1229. That act provides for civil remedies only, whereas Oklahoma's Act is also enforceable by criminal prosecution for a misdemeanor. 15 O.S.1981 § 598.4. *See infra* note 20 for its terms.

**13.** The earliest unfair sales acts date back to the Great Depression. *See* Clark, *Statutory Restrictions on Selling Below Cost,* 11 Vand.L.Rev. 105 (1957). The subject of unfair sales acts is not an uncommon one for legal commentators. *See,* e.g., Reiley, *Enforcement of Legislation Prohibiting Sales Below Cost in Washington,* 42 Wash. L.Rev. 817 (1967); Note, *Statutory Bans Against Selling Below Cost: The Latest Antidote for Big Business,* 25 Va.L.Rev. 699 (1939); Note, *Further Developments in the Field of Statutory Bans Against Selling Below Cost,* 34 Va.L.Rev. 201 (1948). *See also* Annots., *Validity, Construction, and Application of Statutory Provision Prohibiting Sale of Commodities Below Cost,* 128 A.L.R. 1126 (1940), 118 A.L.R. 506 (1939).

*One commentator suggests that a particular act's applicability to manufacturers may be determined by examining the pertinent text's cost definitions. He theorizes a definition of production costs is always found in those unfair sales acts that regulate below-cost sales by producers as well as those by wholesalers and retailers. Typically included in the definitions are raw materials' cost, labor and all overhead expenses. See Note, Sales Below Cost Prohibitions: Private Price Fixing Under State Law,* 57 Yale L.J. 391, 412 (1948).

States with unfair sales acts include: Arkansas, California, Colorado, Hawaii, Kentucky, Idaho, Louisiana, Maine, Maryland, Massachusetts, Minnesota, Montana, North Dakota, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Tennessee, Utah, West Virginia, Wisconsin and Wyoming. Unfair sales acts in Arizona, New Jersey and Oregon have been repealed. Motor Fuel Marketing Acts, prohibiting unfair motor fuel sales, have been enacted in Alabama, Florida, Georgia, Massachusetts, North Carolina and Utah.

**14.** Oklahoma's earlier Unfair Sales Act, 15 O.S. 1941 §§ 591–597, was held unconstitutional as lacking the mandatory *intent element. Englebrecht v. Day,* 201 Okl. 585, 208 P.2d 538, 545 (1949). The act presently in force, adopted in 1949 when the earlier one was repealed, has passed fundamental-law muster three times. The first unsuccessful assault on its constitutionality urged the Act strikes at the very heart of free enterprise. *Adwon v. Oklahoma Retail Grocers Ass'n,* 204 Okl. 199, 228 P.2d 376, 379 (1951). Next, the Act survived equal protection and due process challenges. *Safeway Stores, Inc. v. Oklahoma Retail Grocers Ass'n,* Okl., 322 P.2d 179 (1958), aff'd 360 U.S. 334, 79 S.Ct. 1196, 3 L.Ed.2d 1280 (1959). Finally, the argument that passage of time and changed economic conditions had rendered the Act unconstitutional also failed. *Glenn Smith Oil Co. v. Sheets,* Okl., 704 P.2d 474, 477 (1985).

**15.** "Retailer" is defined in 15 O.S.1981 § 598.-2(g), whose terms are:

"The term 'retailer' shall mean and include every person, partnership, corporation or association engaged in the business of making sales at retail within this state; provided that, in the case of a person, partnership, corporation or association engaged in the business of making both sales at retail and sales at wholesale, such term shall be applied only to the retail portion of such business."

**16.** "Wholesaler" is defined at 15 O.S.1981 § 598.-2(h), whose terms are:

"The term 'wholesaler' shall mean and include every person, partnership, corporation, or association engaged in the business of making sales at wholesale within this state; provided that, in the case of a person, partnership, corporation or association engaged in the business of making both sales at wholesale and sales at retail, such term shall be applied only to the wholesale portion of such business."

**17.** *Glenn Smith Oil, supra,* note 14 at 478.

**18.** The terms of 15 O.S.1981 § 598.6 are:

The provisions of this act shall not apply to sales at retail or sales at wholesale:
(a) where *seasonable merchandise* is sold in bona fide clearance sales, if advertised, marked, and sold as such;

force the act by injunctive relief and an action for damages from the violator's unfair sales.[19] Violations of the Act are also criminally punishable as a misdemeanor.[20]

The cardinal rule of statutory construction is the ascertainment of legislative intent.[21] The Act is *clearly anticompetitive.* It restricts freedom of trade even though its target is only "unfair" or "destructive" price competition.[22] *Because*

> (b) where *perishable merchandise* must be sold promptly in order to forestall loss;
> (c) where *merchandise is imperfect or damaged* or is being discontinued and is advertised, marked and sold as such;
> (d) where *merchandise* is sold upon the *final liquidation* of any business;
> (e) where *merchandise* is sold for *charitable purposes* or to relief agencies;
> (f) where *merchandise* is sold on *contract to departments of the government or* governmental institutions;
> (g) where *merchandise* is sold by any officer acting under the order or *direction of any court;*
> (h) where *merchandise* is sold at any *bona fide auction sale.* [Emphasis supplied.]

So-Lo contends that if the act were meant to exclude manufacturers, they would be included in this list of exempted enterprises. The statutory list includes *only* types of merchandise outside the Act's purview. It gives no clue as to manufacturers' status as an enterprise within the Act's ambit. .

**19.** The pertinent terms of 15 O.S.1981 § 598.5 are:

> "(a) In addition to the penalties provided in this act, any person injured by any violation, or who shall suffer injury from any threatened violation of this act, may maintain an action in any court of equitable jurisdiction to prevent, restrain or enjoin such violation or threatened violation. If in such action a violation or threatened violation of this act be established, the court shall enjoin and restrain or otherwise prohibit, such violation or threatened violation and, in addition thereto, shall assess in favor of the plaintiff and against the defendant the cost of suit. In such action if damages are alleged and proved, the plaintiff in said action, in addition to such injunctive relief and costs of suit, shall be entitled to recover from the defendant the actual damages sustained by him.
>
> \*  \*  \*  \*  \*  \* "

**20.** The terms of 15 O.S.1981 § 598.4 are:

> "Any retailer who shall, in contravention of the policy of this act, advertise, offer to sell or *sell at retail any item of merchandise at less than cost to the retailer as defined in this act;*

competitive prices and unrestricted production are fundamental national economic policies embodied in our federal and state antitrust laws, *exemptions from the antitrust laws must be strictly construed.*[23] Although So–Lo seeks only civil relief in this case, its district court action is best described as private enforcement of a public wrong or "business crime." Strict statutory construction is required for penal statutes.[24] For purposes of assessing the

> or any wholesaler who shall in contravention of the policy of this act, advertise, offer to sell, or *sell at wholesale any item of merchandise at less than cost to the wholesaler as defined in this act,* shall be guilty of a *misdemeanor* and upon conviction thereof shall be punished by a fine of not more than Five Hundred Dollars ($500.00)." [Emphasis supplied.]

**21.** *Hess v. Excise Bd. of McCurtain County,* Okl., 698 P.2d 930, 932 (1985); *Riffe Petroleum Co. v. Great Nat. Corp., Inc.,* Okl., 614 P.2d 576, 579 (1980); *Independent School Dist. v. Okl. City Fed. of Tchrs.,* Okl., 612 P.2d 719, 721 (1980); *Stemmons, Inc. v. Universal C.I.T. Credit Corporation.,* Okl., 301 P.2d 212, 216 (1956); *J.S. Bryan & Sons v. Vernor,* 172 Okl. 382, 45 P.2d 468, 470 (1935).

**22.** The Act is considered a *below-cost-sales statute* rather than *price-fixing legislation. Glenn Smith Oil, supra* note 14 at 477–478. Oklahoma undoubtedly has the power to regulate business and could, if it intended to, include manufacturers within the Act's scope. See *Glenn Smith Oil, supra* note 14 at 478 & nn. 3 & 4.

Our concern here is neither with the wisdom of regulating unfair sales nor with the propriety of including manufacturers within the Act's parameters. Rather, our sole task is to determine whether the legislature, when passing the enactment, intended that it encompass manufacturers.

**23.** *Federal Maritime Commission v. Seatrain Lines,* 411 U.S. 726, 733, 93 S.Ct. 1773, 1778, 36 L.Ed.2d 620, 627 (1973); *United States v. McKesson & Robbins, Inc.,* 351 U.S. 305, 316, 76 S.Ct. 937, 943, 100 L.Ed. 1209 (1956). *See United States v. Masonite Corp.,* 316 U.S. 265, 280, 62 S.Ct. 1070, 1078, 86 L.Ed. 1461 (1942), where the United States Supreme Court held that patent rights must be strictly construed since they are privileges restrictive of a free economy.

**24.** *Quinn v. City of Tulsa,* Okl., 777 P.2d 1331, 1339 (1989). A penal law is one that imposes a penalty for some infraction. If the act or omission be punishable as a misdemeanor, it is a criminal law as well. *The decision to make a statute of this kind applicable to one's activity must be clear and without doubt. Quinn, supra*

coverage's sweep, the statute is not to be extended by implication beyond the legitimate import of its words. *Once the Act's purview is determined, the enforcement provisions may be liberally applied to effect its purposes.*[25] Our query must hence begin with the statutory text.[26]

Section 598.3 prohibits the sale [27] of any merchandise [28] either by retailers or wholesalers, at less than cost *as defined in the Act,* with the intent of inducing the purchase of other merchandise or otherwise injuring a competitor. The Act proscribes sales by a retailer who sells an item of merchandise *at less than cost to the retailer as defined in this act* or a wholesaler who sells *at less than cost to the wholesaler as defined in this act.*

The terms "cost to the retailer" and "cost to the wholesaler" are defined in very specific terms. *The basic denominator for determining cost is either invoice cost or replacement cost,* whichever is lower. To this figure—after deducting trade discounts—are added freight charges, cartage, taxes and a markup to cover a part of the cost of doing business. *These definitions are clear and explicit.* For example, the markup, in the absence of proof of a lesser cost, is six percent of the cost as defined after adding freight charges and cartage. Terms such as "cartage" and "replacement cost" are also tightly defined.

In short, by its chosen scheme and structure the legislature has carefully crafted the definitional sweep for cost to articulate clearly accounting methods to be used for identifying below-cost sales that are within the Act's prohibition.

Commerce has traditionally been divided into production and distribution. *The Act's cost definitions are directed exclusively to those associated with distribution.* So–Lo contends that although the legislature could not have anticipated the modern trend toward hybrid entities which not only manufacture products but sell them both wholesale and retail, calculation of Total's costs is a simple matter of applying "reasonable accounting methods." We must reject this notion. The Act contains no yardstick or gauge for determining production costs. Product cost depends upon the method used to generate it. It may include components associated with expense categories such as labor, raw materials, overhead expenses and depreciation.[29] Different means of valuing assets or assigning general expenses to particular products and periods or computing other elements of production costs could result in a less than uniform application of the Act.[30] Had the legislature intended to include manufacturers, *it would have (a) defined production costs and cost accounting methods to be used as carefully as it did retailers' and wholesalers' costs* and (b) *provided the*

---

at 1339; *State ex rel. White v. Beeler,* Okl., 327 P.2d 664, 668 (1958).

Where only injunctive relief is sought, other courts have adopted a more liberal approach to construction of similar statutes. *Wholesale Tobacco Dealers B. v. National Candy & T. Co.,* 11 Cal.2d 634, 82 P.2d 3 (1938) (en banc); *Rust v. Griggs,* 172 Tenn. 565, 113 S.W.2d 733 (1938). So–Lo urges a liberal interpretation of this statute as one in derogation of the common law. 12 O.S.1981 § 2; 25 O.S.1981 § 29; *Englebrecht, supra* note 14 at 545. Although we properly applied a liberal construction when deciding that the earlier unfair sales act, now repealed, was unconstitutional, the extent of that act's coverage was not there in contest.

*Strict construction is more appropriate here, inasmuch as we consider whether the Act—previously determined to be constitutional—covers by implication a class of persons not explicitly named. See Riffe, supra* note 21 at 579 & n. 11. *See also Watkinson v. Adams,* 187 Okl. 432, 103 P.2d 498, 500 (1940).

**25.** *Riffe, supra* note 21 at 579 & n. 11.

**26.** *Hess, supra* note 21 at 932.

**27.** We use the term "sale" in the interest of simplicity. Advertising and offers to sell in violation of the Act are forbidden as well. Our use of the term "sale" should be taken to include all of the prohibited acts.

**28.** The term "merchandise" includes gasoline products. *Glenn Smith Oil, supra* note 14 at 477.

**29.** Koons, *Methodologies for Determining Manufacturing Cost, 1990 AACE Transactions,* G.2.2.

**30.** *See Note, Sales Below Cost Prohibition: Private Price Fixing Under State Law, supra* note 13 at 394–396, for an explanation of some of the difficulties associated with cost accounting and some problems in achieving uniformity in measuring costs.

*guidelines necessary to the Act's enforcement against manufacturers.*

While the statute neither expressly includes nor expressly excludes manufacturers, its words must be read in context, and the context makes undeniably clear that only below-cost sales *as defined in the act* stand prohibited. The whole structure of the statute, not only the section prohibiting below-cost sales, plainly shows an intent that the Act's ambit be confined to sales specifically defined in it.[31]

This construction is strongly supported by the legislature's treatment of sales of cigarette and tobacco products in a related statute passed at the same legislative session. The Unfair Cigarette and Tobacco Products Sales Act [the Tobacco Act], now found in 68 O.S.1991 §§ 326 *et seq.*,[32] closely parallels the Act here in contest with one major exception: It proscribes not only certain below-cost sales by wholesalers and retailers, but also those sales by *manufacturer's representatives* or *manufacturer's salesmen* that are *below the prices of the wholesaler to the retailer or the retailer to the consumer.* This textually demonstrable inclusion of manufacture-related entities in the Tobacco Act is a strong indication that had the legislature *intended* to include manufacturers in the Act under contest, it would not only have *named and defined them;* nay, it would have added *production-related definitions of cost* as well.

 We find *no warrant for* giving the Act the broad sweep urged by So–Lo. To do so would ignore the statutory language that limits the Act's prohibition to below-cost sales *as defined in the Act.* The legislative language is far too narrow for the judicial interpretation urged by So–Lo. We hence hold that the provisions of the Act do not apply to entities—such as Total—which produce and refine petroleum products and then sell them at wholesale and retail in competition with distributors like So–Lo.

**CERTIFIED QUESTION ANSWERED.**

HODGES, V.C.J., and LAVENDER, SIMMS, HARGRAVE and SUMMERS, JJ., concur.

KAUGER, J., concurs in part and dissents in part.

ALMA WILSON, J., dissents.

---

**31.** The scheme and structure of the legislation are important to a proper ascertainment of its purpose and intent. *United States v. Cooper Corp.,* 312 U.S. 600, 607, 61 S.Ct. 742, 745, 85 L.Ed. 1071, 1076 (1941).

Here we find significant the constant repetition of the phrase *"less than cost as defined in this act."*

**32.** The statute is formerly found in 15 O.S.1971 §§ 599.1 *et seq.*