¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
Does a business violate the Oklahoma Unfair Sales Act, 15 O.S. 2001, §§ 598.1— 598.11, by advertising, offering forsale or selling its merchandise below "cost," as defined in thestatute, if the merchandise is advertised, offered or sold inconnection with a bona fide, short-term promotional event such as aBlack Friday or back-to-school sale?
 Introduction
A. Statutory Prohibitions of the Unfair Sales Act
¶ 1 The Unfair Sales Act in pertinent part provides:
 [A]ny advertising, offer to sell, or sale of any merchandise . . . at less than cost as defined in this act with the intent and purpose of inducing the purchase of other merchandise or of unfairly diverting trade from a competitor or otherwise injuring a competitor, impair and prevent fair competition, injure public welfare, are unfair competition and contrary to public policy and the policy of this act, where the result of such advertising, offer or sale is to tend to deceive any purchaser or prospective purchaser, or to substantially lessen competition, or to unreasonably restrain trade, or to tend to create a monopoly in any line of commerce.
15 O.S. 2001, § 598.3[15-598.3]. The Unfair Sales Act defines "cost" differently depending on whether the business at issue is a retailer or a wholesaler.[1] While we understand your request to pertain only to retailers and therefore analyze the issue from that perspective, this Opinion applies equally to wholesalers. Under the Unfair Sales Act, "cost to the retailer" is based on the retailer's invoice cost or replacement cost, [2] whichever is lower, less any trade discounts except customary discounts for cash.See 15 O.S. 2001, § 598.2[15-598.2](a). To this amount, the following charges are added to reach the appropriate statutory cost: (1) freight charges, including transport to the retail outlet, (2) taxes, and (3) a markup of six percent, absent proof of a lesser amount, to "cover a proportionate part of the cost of doing business." See id.
¶ 2 Per the terms of Section 598.3, a retailer that advertises, offers for sale or sells merchandise for a price below its statutory "cost" is in violation of the Unfair Sales Act if (1) it does so with the intent of inducing customers to purchase other merchandise or injuring a competitor, and (2) the advertisement, offer or sale tends to deceive consumers, substantially lessens competition, unreasonably restrains trade, or tends to create a monopoly in any line of commerce. See 15 O.S. 2001, § 598.3[15-598.3]; see also StarFuel Marts, LLC v. Sam's E., Inc.,362 F.3d 639, 645 (10th Cir. 2004) [hereafter Star Fuel MartsII] (explaining that a violation occurs when a retailer's list price drops below its cost, accompanied by proof of both the intent and a result prohibited by the Unfair Sales Act).
¶ 3 Ordinarily it would be quite difficult for a plaintiff to obtain evidence demonstrating that a retailer possessed the intent and caused a result prohibited by the Unfair Sales Act. However, the Legislature drafted the statute to provide plaintiffs with an evidentiary "boost" to bring such claims. See id. at 650. Specifically, the statute provides that evidence showing that a retailer advertised, offered or sold merchandise at a price below the retailer's cost is "prima facie evidence of intent to injure competitors and to destroy or substantially lessen competition." 15 O.S. 2001, § 598.5[15-598.5](c). "Prima facie evidence is such evidence as in the judgment of law is sufficient to establish a fact, and if not rebutted, remains sufficient to establish that fact." Glenn SmithOil Co. v. Sheets, 704 P.2d 474, 478 (Okla. 1985). Thus, to state a valid claim for violating the Unfair Sales Act a plaintiff need only provide evidence that the price at which the merchandise was advertised, offered or sold was below the retailer's cost. Once a plaintiff puts forth such evidence the burden shifts to the retailer to show that it did not violate the Unfair Sales Act. See StarFuel Marts II, 362 F.3d at 650; Diehl v. Magic Empire GrocersAss'n, 399 P.2d 460, 463 (Okla. 1964).[3]
B. The Purposes Underlying the Unfair Sales Act
¶ 4 The Unfair Sales Act is intended to serve two purposes: to prevent businesses from using so-called "loss leader" sales, and to protect small merchants from larger competitors capable of using below-cost pricing to drive them out of business. So-Lo Oil Co.,Inc. v. Total Petroleum, Inc., 832 P.2d 14, 17 (Okla. 1992).
¶ 5 With respect to the first purpose, "loss leader" sales occur when a business prices certain goods below its cost in an attempt to attract customers who — it hopes — will then purchase more than just the below-cost goods. See id. For example, in Star FuelMarts II, Sam's Club was found to be engaging in "loss leader" sales of gasoline because, among other things, the availability of below-cost gas at Sam's Club locations "increase[d the] frequency of shopping and total purchases by [Sam's Club] Members." See StarFuel Marts II, 362 F.3d at 647. This practice is considered inherently deceptive to consumers because it creates the impression that the business's prices on other goods are similarly reduced.Star Fuel Marts, LLC v. Murphy Oil USA, Inc.,2003 WL 742191, at *13 (W.D. Okla. 2003) aff'd,362 F.3d 639 (10th Cir. 2004). As explained by the United States Supreme Court, "[t]he selling of selected goods at a loss in order to lure customers into the store . . . plays on the gullibility of customers by leading them to expect what generally is not true, namely, that a store which offers such an amazing bargain is full of other such bargains." Safeway Stores, Inc. v. Okla. Retail GrocersAss'n, 360 U.S. 334, 340 (1959) (interpreting the Unfair Sales Act). It should also be noted that while many businesses engaging in a "loss leader" strategy will mark up prices on other merchandise to compensate for the losses from below-cost sales, such price inflation is not a prerequisite for finding a violation of the Unfair Sales Act. Star Fuel Marts II, 362 F.3d at 647-48.
¶ 6 As for the second purpose, below-cost pricing has been deemed a "destructive means of competition," see Safeway Stores,360 U.S. at 340, commonly used by a large retailer willing to absorb short-term losses in order to drive smaller competitors out of the long-term market. See Glenn Smith Oil, 704 P.2d at 478. Once its smaller competitors have been eliminated, the large retailer is able to set prices unconstrained by competition. In this way, "[i]t is possible, unless restrained by law, for a powerful merchandiser with large resources to continue to sell at a loss in a community and thereby drive weaker competitors out of the market, establish a monopoly, mulct the public, and thereby recoup the losses on its previously underpriced goods." 54A Am. Jur. 2d Monopolies § 1048 (2011) (footnote omitted). Thus, the Oklahoma Supreme Court has stated that "below cost pricing is ordinarily not in the public interest in the long run even if in the short run the public is shielded from a price increase." Cox Okla. Telecom,LLC v. State ex rel. Okla. Corp. Comm'n,164 P.3d 150, 171 (Okla. 2007).
C. Certain Below-Cost Sales Exempt from the Unfair SalesAct
¶ 7 Despite the adverse effects associated with below-cost pricing, the Unfair Sales Act includes exceptions for certain types of below-cost sales whose utility outweighs, or at least mitigates, these effects.
¶ 8 Section 598.6 of the Unfair Sales Act specifically exempts the following:
 (1) bona fide clearance sales of seasonal merchandise, if advertised and sold as such;
 (2) sales of perishable goods that must be sold promptly to avoid losses;
 (3) sales of imperfect, damaged or discontinued goods, if advertised and sold as such;
 (4) final liquidation sales;
 (5) goods sold for charitable purposes or to relief agencies;
 (6) goods sold per contracts with government departments or institutions;
 (7) court-ordered sales; and
 (8) bona fide auction sales.
See 15 O.S. 2001, § 598.6[15-598.6]. In addition to these exceptions, the statute also creates a "safe harbor" for a retailer to price its goods below cost in a good-faith attempt to meet the price of similar goods offered by the retailer's competitors. See
15 O.S. 2001, § 598.7[15-598.7]. However, retaliatory pricing where a retailer knows or believes that its competitor's pricing violates the Unfair Sales Act is not considered to be in "good faith" and therefore falls outside the safe harbor. See Glenn Smith Oil,704 P.2d at 478.
 Analysis
¶ 9 Before turning to our analysis, we offer a brief reminder of our role in providing this Opinion. This office opines only on "questions of law," see 74 O.S. 2001, § 18[74-18](b)(A)(5), and we therefore have no comment as to the wisdom of the statute as a matter of policy, which is a determination uniquely within the province of the Legislature. See, e.g., Edmondson v. Pearce,91 P.3d 605, 624 (Okla. 2004) ("The Legislature is primarily the judge of whether facts and conditions exist that make it advisable that any certain business be regulated for the public good, under the police power, and as to what means are best adapted to regulate it. . . ."). Indeed, the Oklahoma Supreme Court has emphasized this principle as it applies to the Unfair Sales Act on several occasions. Most recently, the court in Glenn Smith Oil was asked to reverse prior decisions finding the statute constitutional based on the assertion that "economic conditions and views" underlying the Unfair Sales Act have evolved since its enactment.See Glenn Smith Oil, 704 P.2d at 477. The court declined this request, remarking that "the wisdom or necessity of the Act is not a matter to be decided by this Court," but rather "the State Legislature alone is entrusted by the citizens of this state to judge the wisdom of legislative enactments."Id. (citation omitted); see also Adwon v. Okla. RetailGrocers Ass'n, 228 P.2d 376, 378 (Okla. 1951) (stating that "although the court might hold views inconsistent with the wisdom of or necessity for [a] law, it would not annul the law unless the same was palpably in excess of legislative power").
A. According to the Plain Language of the Unfair Sales Act,the Statute Applies to Advertising, Offering for Sale and SellingMerchandise Below Cost at Short-Term Promotional Events.
¶ 10 To determine whether the Unfair Sales Act applies to advertisements, offers of sale or sales of goods at below-cost prices that are part of what you describe as a "bona fide short-term promotional event," we must first look to the plain language of the statute. While the "primary goal of statutory construction is to ascertain and follow the intention of the Legislature," a statute that is "plain and unambiguous and its meaning clear" does not require further interpretation. TRW/Reda Pump v. Brewington,829 P.2d 15, 20 (Okla. 1992). Where its terms are unambiguous, the statute "will be accorded the meaning expressed by the language used." Id.
¶ 11 The applicability of the Unfair Sales Act, at least with respect to the type of events you describe, is clear. The Unfair Sales Act applies to "any advertising, offer to sell, or sale of any merchandise . . . at less than cost," so long as there is sufficient evidence of the prohibited intent and result.[4]See 15 O.S. 2001, § 598.3[15-598.3] (emphasis added). As used in the statute, the term "any" must be given its plain meaning as would be attributed to it in "ordinary and usual parlance."Fent v. Okla. Capitol Improvement Auth.,984 P.2d 200, 213 (Okla. 1999) (Lavender, J., concurring in part, dissenting in part). Thus, the use of the word "any" gives the Unfair Sales Act broad reach to include every instance of selling merchandise below cost that is not specifically excluded by the statute itself. See Webster's New Collegiate Dictionary 51 (1981) (defining "any" to mean, among other things, "every" or "all"); see also Knight v. Allied Signal,977 P.2d 373, 375 (Okla. Civ. App. 1998) ("By any dictionary, the word `any' . . . means `every.'"). This reading is further supported by the fact that the Unfair Sales Act contains certain limited, specifically enumerated exceptions, which suggests that the statute should apply "to all cases not specifically enumerated."See 2A Norman J. Singer, Sutherland Statutory Construction § 47.11 at 250 (6th ed. 2000). Therefore, short-term promotional events will fall within the reach of the Unfair Sales Act unless one of the statute's exceptions applies.
¶ 12 Based on the plain language of the statute's exceptions, however, none are so broadly worded that the type of short-term promotional events you describe would fit within them. To be sure, several of the exceptions conceivably could be characterized as fitting under the broad umbrella of "short-term promotional events" — for instance, bona fide clearance sales, sales of imperfect, damaged or discontinued goods or final liquidation sales.See 15 O.S. 2001, §§ 598.6[15-598.6](a), (c), (d). However, exceptions to the Unfair Sales Act must be strictly construed, see Harold'sStores, Inc. v. Dillard Department Stores, Inc.,82 F.3d 1533, 1552 (10th Cir. 1996), and the literal requirements of each exception therefore must be met for the exception to apply. Accordingly, we conclude that, while certain short-term promotional events may be excepted from the Unfair Sales Act if they meet the literal requirements of one of the statutory exceptions, none of the exceptions is broad enough to cover all of the possibilities encompassed by your request.
B. The Application of the Unfair Sales Act to Short-TermPromotional Events is Consistent with the Purpose of theStatute.
¶ 13 While our conclusion is based solely on the plain language of the statute, which we find to be unambiguous, this conclusion is consistent with the dual purposes of the Unfair Sales Act. Indeed, we have not located any authority that suggests the short-term nature of events like Black Friday sales or back-to-school promotions would do anything to mitigate what is argued to be the inherent deception of "loss leader" sales or the adverse effects on competition that are generally associated with below-cost pricing. To the contrary, given the extent of commercial attention paid to Black Friday sales, it is plausible that a potential "loss leader" problem surrounding such sales would affect an even greater number of consumers than it would for day-to-day or off-season promotions. Likewise, Black Friday represents the beginning of an important season for retailers, and sales diverted from smaller retailers to their larger competitors based on below-cost pricing — even during such a short period — could have dramatic effects.
¶ 14 Finally, our conclusion also is indirectly supported by a decision of the Oklahoma Supreme Court. In Diehl, the court addressed a trade association's claim that the defendant grocery store had violated the Unfair Sales Act by advertising, and ultimately selling, goods at below-cost prices. The advertisements at issue were weekly circulars that promoted a rotating array of merchandise available at discounted prices for periods ranging from three to five days. Diehl,399 P.2d at 461-62. The court affirmed the trial court's finding that the defendant, by distributing these circulars, had violated the Unfair Sales Act. Id. at 462-63. The court was not asked to, and did not, address the question of whether the promotions, by their short-term nature, fell outside the ambit of the Unfair Sales Act. Nevertheless, the fact that the Oklahoma Supreme Court unanimously affirmed the trial court's decision lends further support to the conclusion that the Unfair Sales Act covers short-term promotions, absent the applicability of one of the statutory exceptions.
¶ 15 It is, therefore, the official Opinion of the AttorneyGeneral that:
 The advertisement, offering for sale and sale of merchandise below cost, as defined by the Unfair Sales Act, at a short-term promotional event violate the Unfair Sales Act unless: (i) the merchandise is priced below cost in a good faith effort to meet the prices of the retailer's competition so as to satisfy the requirements of the "safe harbor" provided in
15 O.S. 2001, § 598.7, or (ii) the event meets the literal requirements of one of the following statutory exceptions as set forth in
15 O.S. 2001, § 598.6[15-598.6] :
 (1) bona fide clearance sales of seasonal merchandise, if advertised and sold as such;
 (2) sales of perishable goods that must be sold promptly to avoid losses;
 (3) sales of imperfect, damaged or discontinued goods, if advertised and sold as such;
 (4) final liquidation sales;
 (5) goods sold for charitable purposes or to relief agencies;
 (6) goods sold per contracts with government departments or institutions;
 (7) court-ordered sales;
 (8) bona fide auction sales.
E. SCOTT PRUITT, Attorney General of Oklahoma
ETHAN SHANER, Assistant Attorney General
[1] The Unfair Sales Act defines a "retailer" as an entity that sells merchandise for consumption by the purchaser, while a "wholesaler" is defined as an entity that sells merchandise to be later resold or subject to further processing or manufacturing. 15 O.S. 2001, § 598.2[15-598.2](e), (f), (g), (h).
[2] "Replacement cost" is the price at which the retailer could have bought the same goods within 30 days prior to the date the goods were sold or offered for sale.Id. § 598.2(c).
[3] While there is some ambiguity in the language of Section 598.5(c) as to whether its evidentiary "boost" applies to both intent and result, this issue was addressed by the Tenth Circuit Court of Appeals in Star Fuel Marts II. Construing the statute in accordance with legislative intent and relying in part on the decision of the Oklahoma Supreme Court in Diehl, the court concluded that Section 598.5(c) applies to both the retailer's intent and the result. See Star Fuel Marts II,362 F.3d at 650.
[4] Whether or not a retailer possesses the requisite intent and causes a prohibited result are questions of fact, see Star FuelMarts II, 362 F.3d at 647, and therefore beyond the scope of this Opinion. See 74 O.S. 2001, § 18[74-18](b)(A)(5). We note, however, that your request presumed that the advertising, offer or sale was at a price below the retailer's cost, which under Section 598.5(c), is sufficient — absent rebuttal — to prove intent and result. See Star Fuel Marts II,362 F.3d at 650.